ART STEEL COMPANY INC., Respondent, v. FEDERICO O. VELAZQUEZ, as President of United Steelworkers of America, C. I. O., Local 1764, Respondent, and RICARDO N. CABASSA et al., Appellants.

First Department, March 25, 1952.

*Carl E. Newton* of counsel (*Walter R. Mansfield, Sidney P. Howell, Jr.,* and *Robert F. Morten* with him on the brief; *Donovan Leisure Newton Lumbard & Irvine,* attorneys), for defendants-appellants.

*Morris Wagman* of counsel (*Irving Sheinfeld* with him on the brief; *Morris Wagman,* attorney), for plaintiff-respondent.

*William Auerbach* for defendant-respondent.

Callahan, J. A temporary injunction has been issued by Special Term restraining the prosecution of a strike initiated by the plaintiff's employees. Plaintiff concededly is engaged in interstate commerce manufacturing art metal products in several plants located in the County of Bronx, City of New York. Since June 15, 1950, a collective bargaining agreement has been in effect governing labor relations of plaintiff and its employees. This agreement was entered into by Local 1764 of the United Steel Workers of America, C.I.O., as duly certified bargaining agent for such employees. The contract expires in June, 1953, but there is a provision for renegotiation in June, 1952.

The employees claim that the contract was arbitrarily, if not illegally, executed by their bargaining agent. They assert that it was submitted for adoption to the union members at a packed meeting, which was so disorderly that no accurate vote could

be taken, and that no majority vote was cast in favor of the contract. They further claim that the C.I.O. union, and its officers and business agents, since the execution of the contract have failed properly to represent the employees or present their grievances. After several meetings in 1951, in which they protested the contract, unsuccessfully demanded resignation of defendant Velazquez as president of the local union, and made like protests, with like lack of success, to the central authorities of the C.I.O. union, the employees called a meeting shortly after November 1, 1951, at which they purported to elect another executive board and one of their number, defendant Caban, as president of Local 1764. Caban's election was refused recognition by plaintiff and the C.I.O., and Caban was forthwith discharged from his employment. Thereupon, the employees struck and began picketing the plaintiff's plants. They claim that 80% or more of all of plaintiff's employees joined in the protest against the arbitrary adoption of the contract, and in the subsequent protests against the C.I.O. representation down to and including the strike.

Since the strike, the employees attempted to disaffiliate themselves with Local 1764 and the C.I.O. and to become affiliated with United Mine Workers of America (U.M.W.A.), a rival international, securing a charter under the Art Steel Employees Union District 50, United Mine Workers of America. Said new local and international union have been named defendants.

The present appeals are (1) by the employees individually and by the U.M.W.A. union from the order granting the temporary injunction, and (2) from an order denying the motion to dismiss the complaint for lack of jurisdiction.

We will first take up the question of jurisdiction in the case. There can be no doubt that the gravamen of the present complaint is as to a condition that involves an unfair labor practice within clause (C) of paragraph (4) of subdivision (b) of section 8 of the Taft-Hartley Act (U. S. Code, tit. 29, § 158, subd. [b], par. [4], cl. [C]). Special Term, nevertheless, refused to dismiss the complaint for lack of jurisdiction (see *Costaro* v. *Simons,* 302 N. Y. 318). It held, in effect, that despite the provisions of the Taft-Hartley Act this court might proceed to enjoin the strike without first having the National Labor Relations Board act in the matter, because the complaint showed that defendants (other than Velazquez) had violated the terms of a current collective bargaining agreement and the provisions of the local charter and international constitution of the C.I.O.,

and that the only thing the plaintiff could do was to proceed in the State court.

It is unnecessary to decide whether the reasons thus assigned by Special Term for assuming jurisdiction are correct. Clause (C) of paragraph (4) of subdivision (b) of section 8 of the Labor Management Relations Act, 1947 (Taft-Hartley Act) makes it an unfair labor practice for a labor organization or its agents to engage in a strike or concerted refusal to perform services, when the object is "(C) forcing or requiring any employer to recognize or bargain with a particular labor organization * * * if another labor organization has been certified as the representative of such employees". That is the gist of the complaint insofar as it relates to the cause of the strike. Merely because, after the certification of a particular union, a collective bargaining agreement was signed, would not seem to alter the fact that where an attempt is being made to force the employer by striking and picketing to recognize a second union, an unfair labor practice as defined in the Taft-Hartley Law is involved. Insofar, therefore, as any injunctive relief is concerned, as distinguished from a claim for damages, it may be doubtful whether under the Federal statute it is required that action be taken by the National Labor Relations Board (Act, § 10, subd. [a], U. S. Code, tit. 29, § 160, subd. [a]). The certification of Local 1764 as bargaining agent is conceded. That a contract was executed by the certified agent would not necessarily alter the procedure to be followed in restraining an unfair labor practice.

In any event, another and more certain ground for assuming jurisdiction exists as the case involves another aspect. The complaint and the moving affidavits on the motion for an injunction charge that the strike is accompanied by many acts of violence and breaches of the peace, which have been set forth in the papers in detail. Plaintiff sought the injunction on the ground of violence as well as breach of the labor agreement. The answering affidavits deny substantially all of the charges of violence and allege that the strike was being conducted in a lawful manner without any mass picketing or breaches of the peace. The Special Term did not pass upon the question as to whether the papers sufficiently disclosed that violence existed. It granted the injunction solely in recognition of the effect of the contract, and because of the failure of the employees to resort to other remedies for relief required by said contract and the C.I.O. constitution.

The allegations of the complaint showing an unfair labor practice as well as those showing the existence of violence must be assumed to be true on the motion to dismiss the pleading for lack of jurisdiction in determining the motion to dismiss the complaint. Accordingly, we must decide what effect the presence of violence has on the question of whether jurisdiction will be retained by a State court in a case where an unfair labor practice as defined in the Taft-Hartley law is shown as the basis of the strike or labor dispute.

The Taft-Hartley law contains no reference to violence as a ground for action by the National Labor Relations Board. " The intention of Congress to exclude States from exerting their police power must be clearly manifested ". (*Napier* v. *Atlantic Coast Line,* 272 U. S. 605, 611; *Allen-Bradley Local* v. *Board,* 315 U. S. 740.) The statute is not to be construed to interfere with the right of the affected parties as individual suitors to seek relief in State or Federal courts to restrain violence. Such application would, of course, be subject to the provisions of such statutes as the Norris-LaGuardia Act (U. S. Code, tit. 29, § 101 *et seq.*) or similar State enactments. (See Teller on Labor Disputes and Collective Bargaining [1950 Supp.], § 398.18.)

In *Auto. Workers* v. *Wis. Board* (336 U. S. 245, 252–253), it was said: " Congress has not seen fit in either of these Acts to declare either a general policy or to state specific rules as to their effects on state regulation of various phases of labor relations over which the several states traditionally have exercised control [citing statutory examples]. However, as to coercive tactics in labor controversies, we have said of the National Labor Relations Act what is equally true of the Labor Management Relations Act of 1947, that ' Congress designedly left open an area for state control ' and that the ' intention of Congress to exclude States from exercising their police power must be clearly manifested.' *Allen-Bradley Local* v. *Wisconsin Employment Relations Board,* 315 U. S. 740, 750, 749. We therefore turn to its legislation for evidence that Congress has clearly manifested an exclusion of the state power sought to be exercised in this case."

The cited decision proceeds to point out that the work stoppages involved were not expressly made unfair labor practices by the Federal statute, and then adds (p. 253): " While the Federal Board is empowered to forbid a strike, when and because its purpose is one that the Federal Act made illegal, it has been given no power to forbid one because its method

is illegal — even if the illegality were to consist of actual or threatened violence to persons or destruction of property. Policing of such conduct is left wholly to the states. In this case there was also evidence of considerable injury to property and intimidation of other employees by threats and no one questions the State's power to police coercion by those methods."

Teller on Labor Disputes and Collective Bargaining (1950 Supp., § 398.24) points out that to punish or prevent violence and breaches of the peace is primarily a State function even under the Federal Constitution, and he construes the Taft-Hartley law as assuming that such local function will be exercised by the courts. We are in accord with this view and will assume jurisdiction because of the charges of violence. We, however, feel that although the intention to permit the States to act in circumstances involving violence may be deemed inherent in the Labor Management Law, it would be consistent and proper that care be exercised to avoid having State action collide with the policies of the Federal act.

Because of the nature of the basic dispute involved, we think that before the trial steps should be taken to ascertain whether the National Labor Relations Board desires to act with respect thereto.

The dispute is essentially between two unions, one of which has been certified by the national board, and charges are made involving alleged misconduct by said certified union. We can anticipate that the machinery of the labor board to investigate the charges of misconduct, and possibly to supervise another election, might be called into play before that dispute is resolved. At least, we deem it proper in this instance to give the board an opportunity to act on the main dispute before we act further thereon. It would seem that the plaintiff has the first duty to present the matter to that board, and we direct it to do so. If it fails to do so promptly, any other party may act.

Returning to the question presented upon the first appeal, we must determine whether the temporary injunction should be maintained in this case. If there had been no collective bargaining agreement here, we would decide this question solely on the basis of the existence of violence in connection with the strike and the extent thereof. But we have a collective bargaining agreement in this case, and it is entitled to due respect at least until it is declared invalid. The agreement contains a covenant against suspension or stoppage of work, and in passing on the question as to whether an injunction should issue we see no reason why we may not give due consideration

to the fact that a covenant was entered into. We see no inconsistency in giving this degree of recognition to the contract, even though we are reluctant to hold that interference with its performance would in and of itself warrant our exercising jurisdiction.

We find the charges of violence substantial, and that the strike was permeated with such disorder and violence to require us to enjoin the entire strike. The danger of a renewal of this disorder would appear to be imminent, if the ban on the strike is presently removed. Therefore, and in view both of the disorder, which warranted our taking jurisdiction, and the covenant against work stoppage above referred to, we direct that the injunction be continued *pendente lite* in all respects. We do not construe any provision of the temporary injunction to prevent an application to the National Labor Relations Board to act in the dispute. To continue the injunction will serve to maintain the *status quo.*

We are of the view that section 876-a of the Civil Practice Act does not bar the issuance of an injunction under the present circumstances (*Florsheim Shoe Store Co.* v. *Retail Shoe Salesmen's Union, Local 287,* 288 N. Y. 188; *Wolchok* v. *Kovenetsky,* 274 App. Div. 282). The present case differs from *Goodwins, Inc.,* v. *Hagedorn* (303 N. Y. 300) in that here one union has been certified by the labor board and an unfair labor practice is involved as well as a strike.

We find no occasion to discuss at length the matters referred to in the concurring opinion. Both opinions are in accord in holding that the presence of violence in connection with the strike affords a sufficient basis for the exercise of our jurisdiction. It, therefore, would not alter our decision even if the making of the contract, or interference therewith, or its breach would possibly afford an additional basis for the exercise of jurisdiction by a State court. Nor does it appear to us necessary to decide whether the decision in the *Costaro* case (302 N. Y. 318, *supra*) holding that the administrative remedy must be exhausted should be applied only to situations which have been newly proscribed as unfair labor practices by the Taft-Hartley Law, and not to those causes previously recognized at common law as actionable by the State courts. (See, however, *Ryan* v. *Simons,* 277 App. Div. 1000, affd. 302 N. Y. 742.) It is enough to hold that neither the statute nor the *Costaro* decision prevents us from exercising jurisdiction in a case where violence is found to exist.

Our disagreement with the dissenting opinion is largely with respect to the extent to which jurisdiction will be exercised in a case involving disorder. We are of the view that once jurisdiction is taken, the entire controversy may be disposed of by the State court.

We think that as a matter of comity the parties should promptly call the dispute to the attention of the National Labor Relations Board. If the National Labor Relations Board takes jurisdiction, after action taken by that board has been determined or concluded, any surviving issues may be disposed of by trial or entry of judgment. If the National Labor Relations Board does not take jurisdiction, we direct an immediate trial of the issues by the court.

The orders appealed from should be affirmed, with one bill of $20 costs and disbursements to the respondents. Settle order.

Van Voorhis, J. (concurring). The Taft-Hartley Act (U. S. Code, tit. 29, § 141 *et seq.*) is invoked by District 50, United Mine Workers of America (U.M.W.A.), and employees of plaintiff whom it is attempting to organize, in applying for a reversal of a temporary injunction order obtained by plaintiff and Local 1764, United Steel Workers of America, C.I.O., restraining interference with a labor contract between plaintiff and said C.I.O. Local. No labor dispute under section 876-a of the Civil Practice Act is involved.

We concur in those portions of the opinion by Mr. Justice Callahan relative to acts of violence as forming a basis for jurisdiction in the State court, and in the conclusion that the order appealed from granting a motion for an injunction *pendente lite,* as well as the order denying the motion to dismiss the complaint, should be affirmed in order to maintain the *status quo* until the dispute between these unions can be adjusted by the National Labor Relations Board or by some other means before the expiration of the existing collective bargaining agreement. The acts of violence set forth in a dozen affidavits, most of which are made on the personal knowledge of the affiants, concern such matters as cutting tires and otherwise damaging automobiles, destruction of operating machinery of the business, bodily assaults upon employees who did not join in the work stoppages, threatening such employees at their homes with bodily harm, and the shouting of abuses at the plant by pickets seeking to intercept employees desiring to work. These acts are not very effectively denied on information and belief, and in our judgment they permeated

the strike activities to such a degree as to warrant the issuance of the temporary injunction.

The reasons stated in Special Term's opinion, combined with these acts of violence, or even without them, also appear adequate to sustain the injunction, and in this respect the case of *Costaro* v. *Simons* (302 N. Y. 318) does not appear to have such a far-reaching effect as is ascribed to it by appellants. This phase of the issue concerns whether the Taft-Hartley Act confers exclusive jurisdiction upon the Federal courts at the instance of the National Labor Relations Board, even where a cause of action for an injunction lies in the State court irrespective of Federal legislation. Undoubtedly, procedure by the National Labor Relations Board in the Federal courts is exclusive to enjoin unfair labor practices which were created by the Taft-Hartley Act. But this action is to restrain unlawful interference with existing contract rights; such a cause of action exists under State law without the aid of this Federal legislation, and it seems to us that such law may still be invoked by an aggrieved party, and an action thereunder maintained in the State court, at least until the National Labor Relations Board has acted in event that an unfair labor practice as defined in section 8 of the Federal statute is also involved.

In *Costaro* v. *Simons* (302 N. Y. 318, 321–322, *supra*) the Court of Appeals stated: " We read the complaint as alleging that the controversy involves unfair labor practices within the purview of the Labor Management Relations Act of 1947 (§ 8, subd. [a], par. [3]; subd. [b], par, [2]; U. S. Code, tit. 29, § 158, subd. [a], par. [3]; subd. [b], par. [2]). That being so, plaintiffs are under the necessity of resorting in the first instance to the National Labor Relations Board." Section 8 of the Federal statute defines unfair labor practices by (a) enumerating such as may be committed by an employer and (b) those which may be committed by a labor organization or its agents. Paragraph (3) of subdivision (a) and paragraph (2) of subdivision (b), which created the unfair labor practice involved in the *Costaro* case, both refer to discrimination in regard to hire or tenure of employment on account of labor union activity or membership. That is an unfair labor practice which was created by the Wagner Act (U. S. Code, tit. 29, § 151 *et seq.*), and did not exist before its passage. Paragraph (3) of subdivision (a) of section 8 of the Wagner Act as amended by the Taft-Hartley Act, refers to discrimination of that nature by the employer; paragraph (2) of subdivision (b) describes the corresponding unfair labor practice by a labor organization

or its agents in causing or attempting to cause an employer to discriminate against an employee in violation of paragraph (3) of subdivision (a). From the circumstance that these particular provisions in section 8 as amended by the Taft-Hartley Act are alone cited in the *Costaro* case, it is reasonable to assume that the unfair labor practice which they define was the only one at issue, and that the case held that the Taft-Hartley Act was granting no remedy by injunction at the instance of private parties for the enforcement of the new causes of action which were created by section 8. In holding that only the National Labor Relations Board could apply to enjoin such unfair labor practices in the Federal courts, the Court of Appeals does not appear to have passed upon whether State courts have been divested of jurisdiction to enjoin practices that were forbidden by State statute or common law without aid from the National Labor Relations Act (U. S. Code, tit. 29, § 141 *et seq.*) or the Taft-Hartley Act.

This appears to be such a cause of action. Section 163 of Teller on Labor Disputes and Collective Bargaining states (p. 493) that, apart from any Federal legislation, " labor unions under collective bargaining agreements with employers have enjoined rival unions from seeking to induce employers to breach the agreements ", citing *Kinlock Tel. Co.* v. *Local Union* (275 F. 241, C. A. 8th, certiorari denied 257 U. S. 662); *Tracey* v. *Osborne* (226 Mass. 25); *Goyette* v. *Watson Co.* (245 Mass. 577); *Wolchak* v. *Wiseman* (145 Misc. 268); *Esco Operating Corp.* v. *Kaplan* (144 Misc. 646), and other cases. The union shop contract in the instant suit would have been valid irrespective of any certification of Local 1764 under the National Labor Relations Act and without regard to that act (*Williams* v. *Quill*, 277 N. Y. 1). It is presumptively valid, notwithstanding the provisions of the National Labor Relations Act (*Matter of Levinsohn Corp.* [*Joint Bd. of Cloak Union*], 299 N. Y. 454). In the 1950 Supplement by Teller, after saying that there is no authority in the State courts to grant injunctions at the instance of private parties restraining the commission of unfair labor practices specified in section 8 of the Taft-Hartley Act, the learned author adds (§ 398.24): " On the other hand, it is doubtful that the Act has deprived state courts of the right to issue injunctions against activities of employees or labor unions carried on for unlawful labor objectives as defined in state law, even if the industry involved in the proceeding ' affects ' commerce provided, of course, that the result does not collide with the

policies of the Act." In the present instance, there is no conflict between the injunction *pendente lite* that was granted at Special Term and the Federal statute.

It would appear that any violation of section 8 of the National Labor Relations Act, as amended by the Taft-Hartley Act, is incidental. Section 8 does not mention the breach of a labor contract already made; it refers to bargaining in order to arrive at a contract with a uncertified union, after a rival union has been certified by the National Labor Relations Board as the proper collective bargaining representative. In this case plaintiff and defendant Local 1764, C.I.O., would have had the right to enjoin District 50 from causing a breach of this labor contract if there had been no Wagenr Act or Taft-Hartley Act, and irrespective of any certification by the National Labor Relations Board.

The Court of Appeals in *Matter of Davega-City Radio* v. *State Labor Relations Bd.* (281 N. Y. 13) had occasion to rule upon the boundaries of Federal and State jurisdiction as between the National and State Labor Relations Boards. The familiar rule was cited (p. 21) that "where there is a *conflict* between a statute enacted by Congress pursuant to its delegated powers, *e.g.,* the regulation of interstate and foreign commerce, and a law adopted by a State in the exercise of its police power, then the former prevails. * * * But where a State act is enforced in the absence of National legislation, or a State act is enforced where there co-exists consistent National legislation, then article VI is complied with, since the supremacy of the laws of the United States is in no manner impaired" (italics from original). It was held that even where an employer was engaged in interstate commerce, "the State Labor Relations Board may enforce the State act at least until such time as it is ousted by the exercise by the National Labor Relations Board of its jurisdiction under the National act." (P. 24.) The court added, significantly for the instant case: "Appellant seeks to create a twilight zone, in which it may disobey its plain duty, required by both statutes, upon the pretext that its conduct is dictated by the other statute." (P. 24.)

Teller (§ 270, p. 735) said that "in view of the general consistency of state with federal Labor Relations Acts, it is the exercise of federal jurisdiction under an actual law, and not the passage of the law, which ousts state courts or agencies from jurisdiction to act." This statement was made before the adoption of the Taft-Hartley Act, to which there is no New

York State counterpart, but the principle applies to the present situation, inasmuch as the activities to be enjoined are forbidden by the New York case law, which is in harmony with the Taft-Hartley Act insofar as they overlap within the area of the subject matter of this lawsuit. Far be it from courts to hold that law has less sanction when it emanates from judicial decision than from statute.

This is analogous to the principle that the States may enforce their antimonopoly laws even though affecting interstate commerce, until the Federal antitrust laws have been invoked, if the State and Federal laws be harmonious (*Standard Oil Co.* v. *Tennessee,* 217 U. S. 413; *Leader Theatre Corp.* v. *Randforce Amusement Corp.,* 186 Misc. 280, BOTEIN, J., affd. without opinion 273 App. Div. 844; *Mayer Bros. Poultry Farms* v. *Meltzer,* 274 App. Div. 169, 176–178).

The opinion of the United States Supreme Court in *Auto. Workers* v. *Wis. Board* (336 U. S. 245, 253) indicates that the Federal jurisdiction under the Taft-Hartley Act is exclusive to enjoin a strike " when and because its purpose is one that the Federal Act *made* illegal " (italics supplied). That signifies that power to sue for injunctive relief which was newly created by the Taft-Hartley Act is conferred upon the National Labor Relations Board, not that any pre-existing right of the employer to sue is being cancelled. This harmonizes with the Report of the Conference Committee of the Congress of the United States upon this legislation, written in the third person: " The conference agreement makes clear that, when two remedies exist, one before the Board and one before the courts, the remedy before the Board shall be in addition to, and not in lieu of, other remedies." Concerning that statement by the conference committee, the Circuit Court of Appeals in the Fourth Circuit stated, in *Amazon Cotton Mill Co.* v. *Textile Workers Union* (167 F. 2d 183, 187, per PARKER, J.): " The last sentence of the quotation does not mean, of course, that a general remedy in the courts was being given by the act, but merely that an option existed where a remedy in the courts was given by the act, or existed otherwise."

The case of *Fay* v. *American Cystoscope Makers* (98 F. Supp. 278, U. S. Dist. Ct., S. D. N. Y., 1951) helps to clarify this subject. The action there was by a union to enjoin the employer and other unions from bringing about the violation of a collective bargaining contract. The employer was charged with co-operating with noncontracting unions to break the agreement.

The employer removed the action to the Federal court, and a motion was made by the contracting union to remand to the State court. This motion was denied by reason of subdivision (a) of section 301 of the National Labor Relations Act as amended by the Taft-Hartley Act (U. S. Code, tit. 29, § 185, subd. [a]) not on any ground that the National Labor Relations Board alone could proceed, but only for the reason that the third cause of action advanced a claim against the employer founded on its own breach of contract which under subdivision (a) of section 301 had to be enforced in an action between the parties in the Federal District Court. The other causes of action against the noncontracting unions for inducing the breach were apparently not considered to be sufficient to keep the case in the Federal court. Such alleged outside interference is all that is involved in the instant case.

In *John Hancock Mut. Life Ins. Co.* v. *United O. & P. Wkrs.* (93 F. Supp. 296, U. S. Dist. Ct., N. J., 1950), the motion to remand was granted, for the reason that a cause of action existed under the State law without recourse to the Federal enactment, notwithstanding that they overlapped to some extent.

To summarize: the cause of action against District 50, to restrain its interference with an existing collective bargaining agreement, was not created by the Taft-Hartley Act nor by the Wagner Act. It existed under New York State law independently of and prior to the adoption of either of those statutes. It is possible that an unfair labor practice created by clause (C) of paragraph (4) of subdivision (b) of section 8 of the National Labor Relations Act, as amended by the Taft-Hartley Act, might also be asserted against District 50 on account of its alleged unlawful conduct in "forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified as the representative of such employees under the provisions of section 9." If the National Labor Relations Board sues for an injunction in the Federal courts under that section, and its right to do so is upheld, the State court may then be deprived of jurisdiction over this action.

No representation proceedings are likely to come before the National Labor Relations Board for some time, in view of the well-known refusal of U.M.W.A. officials to file noncommunist affidavits as required by subdivision (h) of section 9. Until such affidavits are filed, it is useless to direct either District

No. 50 or the employer to begin representation proceedings, since the National Labor Relations Board could not certify District 50 to be the collective bargaining representative even if the proceeding were instituted by the employer (§ 9, subd. [h]). Until the National Labor Relations Board at least sues for an injunction against District 50 in the United States District Court, there is nothing in the National Labor Relations Act, either as originally enacted or as amended by the Taft-Hartley Act, which purports to deprive the State courts of their pre-existing jurisdiction to restrain interference with contract rights, whether arising from collective bargaining agreements or from other contracts. These have sometimes been called " private " as distinct from " public " rights (*National Labor Relations Bd.* v. *Newark Morning L. Co.*, 120 F. 2d 262, 266, certiorari denied 314 U. S. 693; cf. *Barile* v. *Fisher,* 197 Misc. 493). Otherwise conduct which has been restrained where condemned by State law alone (*Goodwins, Inc.,* v. *Hagedorn,* 303 N. Y. 300, 673), might be continued during the interim for the reason that it may be held to be prohibited by Federal law also. This would be liable to stagnate the rights of parties " in a kind of limbo which should not be " (*John Hancock Mut. Life Ins. Co.* v. *United O. & P. Wkrs., supra,* p. 308).

If the State court is to be divested of jurisdiction to entertain this cause of action, which has its origin in the case law of the State, due to the circumstance that an unfair labor practice as defined in section 8 of the Federal Act may also be involved, it would follow that the State courts could not grant injunctions to restrain picketing in such cases even where the activities of the strikers are permeated with violence. Under State law, it has been customary to restrain even peaceful picketing under that circumstance; but if appellants' contention be correct, that could not be done if the injunction under State law were to extend to anything which the Federal act also to some extent prohibits as an unfair labor practice defined by section 8. The hands of the State courts would be tied, regardless of whether the State cause of action for injunctive relief were to prohibit picketing accompanied by violence or to preclude unlawful interference with contract rights. It may well be that the State court would be ousted of jurisdiction, and an employer's injunction vacated, upon actual intervention by the National Labor Relations Board, even in the case of injunctions restraining all picketing on account of violence permeating strike activities conducted in furtherance of an unfair labor practice as defined by section 8,

but it is conceded that this would not prevent the State court from restraining such activities in the beginning. Neither should it prevent the State courts from exercising their accustomed jurisdiction to restrain unlawful interference with existing contracts until the National Labor Relations Board intervenes.

No intimation is made that appellants are without orderly remedy if the contentions which they make are true. If the employer be guilty of unfair labor practice in discharging individual employees by reason of their activity in behalf of District 50, recourse by them to the National Labor Relations Board has not been enjoined by the order appealed from and has been open at all times. Under the contract with Local 1764, C.I.O., wages may be renegotiated at any time after June, 1952. The terms of the existing officers of that union expire then, at which time appellants may act to fill such positions by choosing others more to their liking. If Local 1764 no longer represents a majority of plaintiff's employees, due to their having resigned and joined District 50, it would be open to them (if the necessary noncommunist affidavits were filed) to apply to the National Labor Relations Board for decertification of Local 1764 as the collective bargaining representative, in which event it may well be that the existing contract would inure to the benefit of a newly selected collective bargaining representative. (Cf. *Klein* v. *Herrick,* 41 F. Supp. 417, U. S. Dist. Ct., S. D. N. Y., RIFKIND, J.) Nothing in the language of the order appealed from purports to stay any application to the National Labor Relations Board.

The orders appealed from should be affirmed, with costs.

SHIENTAG, J. (dissenting). I dissent with respect to the appeal from the order which granted plaintiff's motion for an injunction and shall briefly give my reasons. There is involved in this case an alleged unfair labor practice specifically so defined by the Taft-Hartley Law (U. S. Code, tit. 29, § 141 *et seq.*). That being so, the issue should be determined in the first instance, at any rate, by the National Labor Relations Board, which has jurisdiction under the circumstances here presented, including the right to apply to the Federal courts for an appropriate injunction as the situation may warrant (*Auto. Workers* v. *Wis. Board,* 336 U. S. 245; *Bus Employees* v. *Wisconsin Board,* 340 U. S. 383, and particularly Note 12, p. 390).

Notwithstanding the primary, if not exclusive, jurisdiction of the National Labor Relations Board to deal with the alleged unfair labor practice here involved, a State court nevertheless has the power to deal with violence and disorder within the territory of the State, in connection with strikes and with picketing thereunder. Such State jurisdiction, however, is limited to the violence and to the implications resulting therefrom; its jurisdiction to deal with the alleged unfair labor practice specifically defined as such under the Taft-Hartley Law is not extended because of the existence of violence and disorder in connection with the strike. If there had been no violence or disorder, the State courts would have had no jurisdiction, in the first instance at any rate, to issue an injunction in this case, because of the alleged unfair labor practice. Such jurisdiction is not conferred merely because of the existence of violence and disorder.

I reach the conclusion, therefore, that under the situation here presented a State court would have jurisdiction (1) to enjoin violence or disorder in connection with the strike and the picketing thereunder; (2) to enjoin the picketing in its entirety, if it were so permeated with violence that peaceful picketing could not reasonably be anticipated; or (3) to direct a hearing on the issue of violence and disorder to determine whether, and to what extent, the picketing should be enjoined.

It is my opinion that irrespective of whether there is here involved a labor dispute within the meaning of section 876-a of the New York Civil Practice Act, the issue of violence, under the circumstances disclosed in this record, it not one which should be disposed of on affidavits, but should be determined only after a hearing promptly had. I therefore vote to reverse the order granting the temporary injunction and to remit the proceedings to the Special Term for a hearing, as herein indicated.

DORE, J. P., concurs with CALLAHAN, J.; VAN VOORHIS, J., concurs in result in opinion, in which COHN, J., concurs; SHIENTAG, J., dissents in opinion only with respect to the first appeal in which he votes to reverse the temporary injunction, but he concurs in the second appeal and votes to affirm the order denying the motion to dismiss the complaint.

Orders affirmed, with one bill of $20 costs and disbursements to the respondents. Settle order on notice.