**IRVING SUBWAY GRATING CO., Inc.**
v.
**SILVERMAN et al.**
Civ. No. 13877.

United States District Court
E. D. New York.

Dec. 4, 1953.

On Motion for Reargument
Dec. 22, 1953.

Kenneth B. Ray, New York City, Nicholas M. Selinka, New York City, of counsel, for plaintiff.

Schuman, Giaccone, Dorn & Marcus, New York City, Asher Marcus, Francis X. Giaccone, New York City, of counsel, for defendants.

BRUCHHAUSEN, District Judge.

The defendant moved to dismiss the complaint and to dissolve the injunction granted by the New York State Court upon the ground that the granting of relief as prayed for in the complaint constituted a violation of the provisions of the National Labor Relations Act of 1947, Title 29 U.S.C.A. § 151, commonly called The Taft-Hartley Act. The plaintiff by cross-motion demanded that the case be remanded to the State Court.

The action originated in the State Court, the Supreme Court of the State of New York, and was removed to this Court upon the petition of the defendants, wherein they claimed, in substance, that the action involved a federal question and was removable under Title 28 U.S.C.A. § 1441. The plaintiff contends that the action should be remanded, pursuant to Title 28 U.S.C.A. § 1447, upon the grounds that the aforesaid removal was improvident and without jurisdiction.

Both motions raised the question of the jurisdiction of this Court as to the action.

The plaintiff, a manufacturer of steel flooring products, commenced this action in the said State Court against the defendants, officers and members of a labor organization, and demanded an injunction, restraining the defendants from committing alleged tortious acts, and damages in connection therewith. Shortly prior to the removal of the case to this Court, the plaintiff procured a temporary injunction in the New York State Supreme Court which was continued by the Appellate Division, Second Department.

It is essential that the allegations of the complaint be examined and considered for a proper determination of the jurisdictional question.

The plaintiff, in the complaint, alleges in substance that it is a New York corporation, engaged in a business substantially affecting interstate commerce as defined by the National Labor Relations Act of 1947, as amended, that the defendant is a labor union, known as Local 810, Steel, Metal, Alloys and Hardware Fabricators and Warehousemen, Affiliated with the International Brotherhood of Teamsters, A. F. of L. (hereinafter called uncertified Local 810), that the plaintiff has had a collective bargaining agreement with a union known as Local 2504 of the United Steelworkers of America, that the said Local 2504 is the certified

union of employees of the plaintiff, for collective bargaining purposes (which latter union is hereinafter called certified Local 2504), that pursuant to the said certification, the plaintiff, in 1941, entered into a collective bargaining agreement with certified Local 2504 concerning the terms and conditions of employment in its plant, that the agreement was renewed from time to time until October 20, 1952, at which time the plaintiff entered into a second agreement with the said certified Local 2504, which latter agreement terminated on October 1, 1953, and was renewed by written agreement, dated August 17, 1953, that on August 13, 1953, at 7:30 A.M., representatives of uncertified Local 810, including the individual defendants, appeared at the gates of the plaintiff's Long Island City plant urging its employees not to report for work, that some of the said representatives carried picket signs, alleging unfair practices on the part of the plaintiff with respect to the defendant uncertified Local 810, that these acts were deliberately performed with the purpose of confusing the plaintiff's employees and caused them to return home on that day, resulting in an interruption of business, that these practices were continued the following day, August 14, 1953, on which day, certified Local 2504 held its union meeting and instructed its representatives to enter into a collective bargaining agreement with the plaintiff, that the agreement was consummated, that on August 18, 1953, uncertified Local 810 filed a petition with the National Labor Relations Board asking that it be certified as the bargaining agent of the plaintiff's employees, that a few days thereafter uncertified Local 810 also filed unfair labor practice charges against the plaintiff, that on August 26, 1953, the plaintiff filed unfair labor practice charges against uncertified Local 810, which charges are now pending and that the National Labor Relations Board advised the plaintiff to seek injunctive relief in the State Court. Thus, both the plaintiff and the defendants have charged each other with unfair labor practices, as defined in the said National Labor Relations Act.

The plaintiff further alleges, in paragraph twenty-sixth of the complaint, that, in the process of such activities, the defendants wilfully, maliciously, and with intent to interfere, injure and damage the plaintiff's business, trade, property and goodwill and employee relations, have regularly, systematically and recurrently engaged in unlawful conduct and activities, summarized as follows:

a. Picketing in front of the plant.

b. Mass picketing, including molesting, coercion, threats.

c. Using insulting, degrading, profane language.

d. Trailing employees on the streets, and to their homes, assaulting them, threatening physical violence to them and their families.

e. Exhorting others not to haul and deliver for plaintiff.

f. Approaching, molesting, frightening, intimidating, coercing by violence, and by fraudulent and misleading statements to employees of the railroads and barge workers, designed to induce them to refrain from servicing plaintiff.

g. Picketing by organizers, including the defendants, to promote the alleged conduct.

h. Urging plaintiff's employees not to report for work at plaintiff's plant, urging them to break their contract with plaintiff.

i. Inducing employees at plaintiff's Long Island City plant to remain away from work, strike and receive "strike benefits".

The plaintiff also alleges that all of the said acts were and are designed for the purpose of coercing it to recognize the defendants' union as the collective bargaining agent for the plaintiff's employees without an election, and despite the fact that a petition for certification on behalf of uncertified Local 810 is cur-

rently before the National Labor Relations Board. The plaintiff, in the second cause of action, charges that the defendants and others conspired to accomplish the aforementioned purpose through the said acts. Injunctive relief is sought by the third cause of action. Judgments for damages are demanded in the other causes of action.

In brief, the plaintiff (a New York resident) claims that it has a collective bargaining agreement with certified Local 2504, that it is being interfered with and conspired against by uncertified Local 810 and others (also New York residents) by acts of violence, that unfair labor practices, as defined by the National Labor Relations Act, are involved, that the plaintiff has complained to the Board, respecting such practices and that uncertified Local 810 has also complained to the Board. The plaintiff instituted this action in the State Court (later removed to this Court) for injunctive relief and damages, based on alleged violations of State law, which may also constitute a violation of 29 U.S.C.A. § 158(b) (1), (4) (A, C).

It appears that the plaintiff made a motion in the action, in the State Court, for a temporary injunction. Mr. Justice Colden by decision, dated October 1, 1953, granted the motion, relying upon the case of Art Steel Co. v. Velazquez, 280 App.Div. 76, 111 N.Y.S.2d 198, holding that the State Court may enjoin strikes, involving violence, even though the conduct may involve a specific unfair labor practice under the National Labor Relations Act and that the mere fact that a labor practice, as defined in the Act, is involved does not deprive the State Court of jurisdiction. This, then, is the fundamental question presented by the plaintiff's cross-motion to remand the action to the State Court, and the defendants' motion to dissolve the State injunction and to dismiss the complaint.

The defendant uncertified union relies upon the case of Costaro v. Simons, 302 N.Y. 318, 98 N.E.2d 454, for the principal that primary redress is from the National Labor Relations Board and secondary redress from the Federal Court under these specific facts. The authority cited is inapplicable in that the case involved an injunction restraining the breach of a collective bargaining agreement between the parties and this was within the jurisdiction of the National Labor Relations Board. In the case at bar, the defendants did not have that status. In the case of Art Steel Co. v. Velazquez, supra [280 App.Div. 76, 111 N.Y.S.2d 203], it is correctly pointed out that nothing in the case of Costaro v. Simons "prevents us from exercising jurisdiction in a case where violence is found to exist." The New York State courts have asserted jurisdiction in cases involving violence even though an enumerated Federal unfair labor practice was involved. This Court must test the validity of such assertion, and whether or not an action for damages may be maintained.

The defendants also cite the case of Bethlehem Steel Co. v. New York State Labor Relations Board, 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234, reversing the New York Court of Appeals, 295 N.Y. 601, 64 N.E.2d 350, in support of the contention that "with respect to labor management matters which affect interstate commerce, the state tribunal was pre-empted of its powers by the federal statutes on the subject of labor-management relations." An examination of that case establishes that the theory and rationale are not applicable. The Bethlehem Steel case, supra, involved a direct conflict of State and Federal administrative law. It appears therein that certain foremen, after having failed to succeed under Federal law, attempted to accomplish their objective in the State Court, 330 U.S. at page 770, 67 S.Ct. at page 1028, of the said case. In such a conflict, the principle set forth in the case of Napier v. Atlantic Coast Line Railroad Company, 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432, permits inference of complete exclusion of State administrative regulation. Here, there is no conflicting policy question calling for the application of the doctrine of pre-emption.

The defendants further cite the case of Pocahontas Terminal Corp. v. Portland Building & Construction Trade Council, D.C., 93 F.Supp. 217, in support of their claim that this action was properly removed to this Court. It appears that the said action was commenced in a State Court to enjoin picketing, and that it was removed to the Federal Court and there retained under the doctrine of pre-emption. The Court, 93 F.Supp. at page 219, said:

"Section 1337, U.S.C.A., Title 28, confers original jurisdiction on the District Court 'of any civil action or proceeding arising under any Act of Congress regulating commerce * * *.' Under this section, jurisdiction does not rest on questions of amount involved or diversity of citizenship. See Mulford v. Smith, 1946, 307 U.S. 38, 46, 59 S.Ct. 648, 83 L.Ed. 1092.

"The fundamental issue presented by the motion to remand is whether this action arises under any act of Congress regulating commerce. Section 1337, U.S.C.A., Title 28, provides the test to be applied in determining the question relating to the original jurisdiction of the United States District Court."

The Court, in the Pocahontas case, supra, further said:

"To determine whether the Taft-Hartley Act is the real basis of the present proceeding, this Court must ascertain:

"(1) Whether the complaint shows a controversy affecting interstate commerce within the meaning of that law; and

"(2) Whether the alleged illegality of defendants' acts, as set forth in the complaint, necessarily stems from the Taft-Hartley Act.

"These questions must be answered from the face of plaintiff's complaint alone, as filed in the State Court, unaided by reference to any other pleadings or to the petition for removal itself."

An analysis of the Pocahontas case discloses that the Court did not decide that the case "necessarily stems from the Taft-Hartley Act." It merely listed the possible sections of the law to which the practices might relate, and then rejected the contention that the State Court might enjoin them. In this connection the Court, 93 F.Supp. at page 223, said:

"Since Federal law has comprehensively entered the field here involved, the door must be regarded as closed to parallel State action. The mere fact that the Taft-Hartley Act applies to all aspects in which defendants' picketing is claimed illegal is itself sufficient to deny the applicability or relevance of State law covering the same ground." (Citing cases.)

Not only was there no violence alleged in the Pocahontas case but an analysis of the cases cited to support the above conclusion of law will show that they are inapplicable and, in fact, involve conflicts of State and Federal administrative law, and not a case by case adjudication of accrued actions for violence, conspiracy, and damages thereunder. Whether there is such conflict is the true test applied in the cases involving administrative law. Algoma Plywood & Veneer Co. v. Wisconsin Employment Relations Board, 336 U.S. 301, 69 S.Ct. 584, 93 L.Ed. 691.

The case of International Union of United Automobile, Aircraft and Agricultural Implement Workers v. O'Brien, 339 U.S. 454, 70 S.Ct. 781, 94 L.Ed. 978, is the first authority cited in the Pocahontas case. That case specifically closed the State door to regulation of peaceful picketing in labor disputes, 339 U.S. at page 457, 70 S.Ct. at page 782, and held that the State bargaining unit may not be different than the Federal since "a state statute so at war with federal law cannot survive." 339 U.S. at pages 458, 459, 70 S.Ct. at page 783. That case not only fails to support removal of this action from the State Court on the ground of pre-emption but emphasizes that labor violence is subject to State police control. In referring to a situation involv-

ing a recurrent or intermittent unannounced stoppage of work to win unstated ends, the Court said, 339 U.S. at page 459, 70 S.Ct. at page 783:

"That activity we regarded as 'coercive,' similar to the sitdown strike held to fall outside of the protection of the federal Act in National Labor Relations Board v. Fansteel Metallurgical Corp., 1939, 306 U.S. 240, 59 S.Ct. 490, 83 L.Ed. 627, and to the labor violence held to be subject to state police control in Allen-Bradley Local No. 1111 [United Electrical Radio and Machine Workers] v. Wisconsin [Employment Relations] Board, 1942, 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154."

In the latter case, the Court said [315 U.S. 740, 62 S.Ct. 825]:

"Furthermore, this Court has long insisted that an 'intention of Congress to exclude states from exerting their police power must be clearly manifested'".

The case of La Crosse Telephone Corp. v. Wisconsin Employment Relations Board, 336 U.S. 18, 26, 69 S.Ct. 379, 93 L.Ed. 463, pertaining to a clash between Federal and State administrative boards, is not in point nor is the case of Hill v. State of Florida ex rel. Watson, 325 U.S. 538, 544, 65 S.Ct. 1373, 1376, 89 L.Ed. 1782, which involved a directly conflicting statute and clearly recognized State control of violence by stating in the concurring opinion:

"This, of course, does not mean that labor unions or their officers are immune, in other respects, from the exercise of the state's police power to punish fraud, violence, or other forms of misconduct, either because of the commerce clause or the National Labor Relations Act."

The majority opinion at page 539 of 325 U.S., at pages 1373, 1374 of 65 S.Ct. supports the statement.

The Bethlehem Steel case has been previously commented upon and the Plankinton affirmance in, Plankinton Packing Co. v. Wisconsin Employment Relations Board, 338 U.S. 953, 70 S.Ct. 491, 94 L.Ed. 588, adds nothing to this case. Furthermore, Judge Hincks in his opinion in the case of Hat Corp. of America v. United Hatters, etc., D.C., 114 F.Supp. 890, pointed out how clearly the Pocahontas case, based on distinguished cases, ignores the jurisdictional limitation of the Labor Acts with respect to damages.

The defendants in their brief quote part of a dissenting opinion in the case of Goodwins, Inc., v. Hagedorn, 303 N.Y. 300, 311, 101 N.E.2d 697. That case is not relevant in that no certified union was involved and thus there was no conflict with the Federal Labor Act, see page 306 of 303 N.Y., see pages 699, 700 of 101 N.E.2d.

The defendants also cite the case of Fay v. American Cystoscope Makers, D. C., 98 F.Supp. 278, 279, which they claim places this case properly in the Federal Court. An analysis thereof establishes that the case is inapplicable in this situation. The plaintiff therein, a certified labor union, brought an action against the employer and others for conspiracy with another union to destroy the plaintiff union. In that case, the Court said, 98 F.Supp. at page 280:

"The jurisdiction of the district court under 29 U.S.C.A. § 185 depends upon one of the parties' holding a particular status, that is, a union representing employees in an industry affecting commerce."

Defendants seeking removal had no such status. This is not a suit for breach of contract within the meaning of 29 U.S.C.A. § 185. See also Wright & Morrissey, Inc., v. Burlington Local No. 522, D.C., 106 F.Supp. 138, 140.

It is crucial that 29 U.S.C.A. § 160(a) does not state that all factual situations constituting Federal enumerated unfair labor practices must necessarily come before the Board in every instance. Nor is there any indication that damage actions are barred. Before the State police power is ousted and before case by case adjudications for relief are destroyed by mere inference, Congress

should so expressly declare rather than the Court. Private rights should not be thrown into a vacuum, so long as they are not inconsistent with Federal policy. This is especially so in that the Board may decline to take jurisdiction or afford complete relief. 29 U.S.C.A. § 156; Local Union No. 12, Progressive Mine Workers v. National Labor Relations Board, 7 Cir., 189 F.2d 1.

Paragraph twenty-fifth of the complaint in the subject action alleges that the National Labor Relations Board informed the plaintiff that it should apply for relief to the State Court. The oft-quoted case of Amazon Cotton Mill Co. v. Textile Workers Union, 4 Cir., 167 F.2d 183, does not take away State action in this type of situation, nor does the fact that 29 U.S.C.A. § 160(a) empowers the Board to prevent unfair labor practices, unaffected by any other means of adjustment, or prevention that has been or may be established by agreement, law or otherwise, necessarily grant exclusive jurisdiction to the Board. It means that the Board, if it intercedes in a case, may deprive the State of jurisdiction. However, it does not mean that, in the first instance, only the Board may act to the exclusion of State causes of action for conspiracy or violence. Whether that power exists in any and all circumstances need not be determined here. Cf. National Labor Relations Board v. International Union, United Automobile, Aircraft and Agricultural Implement Workers, 7 Cir., 194 F.2d 698, 702. There is considerable difference between the functions of a Board invested with discretionary power to act, and the remedies of a party alleging a cause of action, under State law. If the distinction is to be eliminated in situations where there is no conflict between the two, such action should be by Congress, and not by a Court. There is no manifestation of the intent of Congress to exclude State action. As was said in Art Steel Co. v. Velazquez, supra, 111 N.Y.S.2d at page 201:

"The Taft-Hartley law contains no reference to violence as a ground

for action by the National Labor Relations Board. 'The intention of Congress to exclude states from exerting their police power must be clearly manifested.' Napier v. Atlantic Coast Line R. Co., 272 U.S. 605, 611, 47 S.Ct. 207, 209, 71 L.Ed. 432; Allen-Bradley Local 1111, etc., v. Wisconsin Employment Relations Board, 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154. The statute is not to be construed to interfere with the right of the affected parties as individual suitors to seek relief in state or federal courts to restrain violence. Such application would, of course, be subject to the provisions of such statutes as the Norris-LaGuardia Act, U.S.Code, tit. 29, § 101 et seq., 29 U.S.C.A. § 101 et seq., or similar state enactments. See Teller on Labor Disputes and Collective Bargaining, 1950 Supp. § 398.18.

"In International Union, U.A.W., A.F. of L. v. Wisconsin Employment Relations Board, 336 U.S. 245, 252, 253, 69 S.Ct. 516, 521, 93 L.Ed. 651, it was said: 'Congress has not seen fit in either of these Acts to declare either a general policy or to state specific rules as to their effects on state regulation of various phases of labor relations over which the several states traditionally have exercised control (citing statutory examples). However, as to coercive tactics in labor controversies, we have said of the National Labor Relations Act what is equally true of the Labor Management Act of 1947, that 'Congress designedly left open an area for state control' and that 'the intention of Congress to exclude states from exerting their police power must be clearly manifested.' Allen-Bradley Local No. 1111 (etc.) v. Wisconsin Employment Relations Board, 315 U.S. 740, 750, 749, 62 S.Ct. 820, 826, 825, 86 L.Ed. 1154."

The case at bar is not one necessarily arising under the Federal law, and so is not one in which the Federal Court

must necessarily have original jurisdiction. In the case of Hat Corp. of America v. United Hatters, etc., supra, the Court, 114 F.Supp. at page 894, said:

"Rather it is the theory of the complaint that the acts complained of constituted a tort cognizable under State law for which resulting damages are recoverable under State law. Such a claim for damages, in the absence of diversity of citizenship, is not one of which this court has original jurisdiction. Amazon Cotton Mill Company v. Textile Workers Union, supra."

In the said Hat. Corp. case, Judge Hincks analyzed the opinion in the Pocahontas case, supra, and in the case of Direct Transit Lines v. Local Union No. 406, etc., 6 Cir., 199 F.2d 89, and also passed upon the jurisdictional matters. This Court subscribes to those statements. Obviously, the complaint in the case at bar is based upon State law, involving both violence and conspiracy.

That the District Court does not have jurisdiction other than in cases arising out of applications made by either the National Labor Relations Board or the Attorney General acting under the direction of the President is pointed out in the opinions in the cases of Walker v. United Mine Workers of America, D. C., 105 F.Supp. 608, and Amazon Cotton Mill Co. v. Textile Workers Union, 4 Cir., 167 F.2d 183. If the subject action remained in the District Court, it would have no power to grant the remedy sought. The Walker case involved an action in the State Court for an injunction restraining alleged unlawful acts of the defendant union. That Court granted a preliminary injunction. Thereupon the defendant caused the removal of the action to the District Court. In its opinion, the latter Court stated, 105 F.Supp. at page 610, that the National Labor Relations Act, in effect, contained limitations on the jurisdiction of the District Courts with respect to unfair labor practices, and particularly that such jurisdiction to grant injunctions was limited to applications there-for made by the National Labor Relations Board or the Attorney General on direction of the President. The said Court in remanding the case to the State Court quoted part of the opinion in the case of Amazon Cotton Mill Co. v. Textile Workers Union, supra [167 F.2d 187], viz.:

"In no other cases does the act confer jurisdiction upon the District Courts to deal with unfair labor practices; and it is hardly reasonable to suppose that Congress intended the District Courts to have general power to grant injunctive relief, at the suit of either unions or employers, with respect to any unfair labor practice that might exist, while limiting with such meticulous care the cases in which those courts might grant injunctive relief upon petition of the Labor Board or the Attorney General acting under the direction of the President. Expressio unius est exclusio alterius."

■ In view of the limitations as to damages in the Federal Court in actions involving Federal labor questions, see Amazon Cotton Mill Co. v. Textile Workers Union of America, supra, and Walker v. United Mine Workers of America, supra, and the complete absence of Congressional intent to preempt State jurisdiction of actions based on State law, especially where violence is involved, this Court concludes that there was no complete divestiture of State jurisdiction of the matters alleged in the complaint herein simply because a State cause of action constituting an unfair labor practice, as defined in the National Labor Relations Act, was also involved.

The defendants' motion to dismiss the complaint and to dissolve the injunction is denied. The plaintiff's motion to remand to the New York State Court is granted.

Settle orders on notice.

On Motion for Reargument

The defendants moved for a reargument of their motion to dismiss the com-

plaint herein and of the plaintiff's motion to remand this action to the State court.

The said motion to dismiss the complaint was denied and the said motion to remand was granted by this Court, by its decision, dated December 4, 1953.

The defendants, in their lengthy moving affidavit submitted on the present motion, attempt to distinguish cases, mentioned in the said earlier decision of this Court, and cite or quote from additional cases in support of their position.

■ It is apparent that the defendants misapprehend the aforesaid decision of this Court, wherein it held that Congress, by the enactment of the National Labor Relations Act, did not exclude State jurisdiction in cases involving violence and pointed out that the National Labor Relations Board directed the plaintiff to apply to the State court for relief. It is not disputed that the said Act conferred jurisdiction upon the National Labor Relations Board in situations involving peaceful strikes or in representative proceedings, such as are involved in the cases of Amalgamated Ass'n of Street, Electric Railway & Motor Coach Employees v. Wisconsin Employment Relations Board, 340 U.S. 383, 71 S.Ct. 359, 95 L.Ed. 364, 22 A.L.R.2d 874; Davis v. Nunley, 5 Cir., 168 F.2d 400 and Qualls v. United States, 5 Cir., 149 F.2d 891, cited by the defendants.

The newly cited case of Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 73 S.Ct. 900, held, in substance, that an action brought by a resident of the Florida District Court against a foreign corporation was properly within its jurisdiction if the defendant was doing business in that State and was properly served with process, and that this should be determined by the District Court. This case is wholly inapplicable. The case of Kolkin v. Gotham Sportswear, Inc., 10 F.Supp. 682, previously cited by defendants, involved an injunction under the Clayton Anti-Trust law, 15 U.S. C.A. § 12 et seq., and is completely inapplicable on the facts, as well as in

theory. This Court is given no aid in the question at bar by the case of Peyton v. Railway Express Agency, Inc., 316 U. S. 350, 62 S.Ct. 1171, 86 L.Ed. 1525. The case of S. E. Overton Co. v. International Brotherhood, etc., D.C., 115 F. Supp. 764, involved a State statute which, of course, must fall under the ban of the Garner decision, discussed, infra, and clearly excepted violence, 115 F. Supp. at page 773, relying on cases cited by this Court and by the United States Supreme Court in the Garner case, infra, which case was decided subsequent to the date of this Court's decision.

Subsequent to the submission of this motion for decision, the defendants called the Court's attention to the case of Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776 (A.F.L.), 74 S.Ct. 161, 164, decided by the United States Supreme Court on December 14, 1953, upon which they apparently rely.

While that case involved peaceful picketing and circumstances which were clearly within the jurisdiction of the National Labor Relations Board, pursuant to the National Labor Relations Act, the Supreme Court of the United States held therein that State control as to the same was pre-empted. The Court also declared that the said Act "leaves much to the states". In that connection the Supreme Court referred to its earlier adjudications, all mentioned in the prior decision of this Court herein, holding that a state "still may exercise 'its historic powers over such traditionally local matters as public safety and order and the use of streets and highways'", and threatening "a probable breach of the state's peace".

It will be recalled that the National Labor Relations Board declined to act in the case at bar and told the plaintiff to seek relief in the State court. Hence we do not have, as stated in the Garner case, a "multiplicity of tribunals and a diversity of procedures", which "are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law." The State should be free to exercise its police pow-

er which is clearly excluded from Federal jurisdiction in violence cases, especially where the said Board, as aforesaid, directed the plaintiff to pursue its remedy in the State court. There is, and this Court considers it of paramount importance, a holding by the New York State Supreme Court in this action that violence existed.

Therefore, the contention that Congress intended to legislate for the entire field of labor controversy and excluded all State jurisdiction is untenable.

In the Garner case, supra, 74 S.Ct. at page 168 the Court also made the following distinction between public and private rights, viz.:

"Perhaps in this country the most usual differentiation is between the legal rights or duties enforced through the administrative process and those left to enforcement on private initiative in the law courts."

In the said case, it appeared that picketing by the defendants was orderly and peaceful. Its purpose was to influence the plaintiffs' employees to join the defendants' union. No labor violence was claimed, as was found in the case at bar by the New York Supreme Court. The plaintiffs the employers sought an order restraining the picketing upon the ground that it seriously interfered with the conduct of its business in that drivers for other carriers refused to cross the picket line. The State court of original jurisdiction, in Pennsylvania, granted an injunction. On appeal, the highest court of the State reversed and dissolved the injunction and the latter decision was affirmed by the United States Supreme Court. The affirmance was upon the ground that coercion of an employer by means of peaceful picketing was a subject provided for in the National Labor Relations Act and hence not within the jurisdiction of the State courts, because of a State statute. The Supreme Court in the Garner case, supra, pointed out that the plaintiffs could have petitioned the National Labor Relations Board. In the case at bar, the Board refused to entertain the petition for relief.

However, the Court in the Garner case, supra, 74 S.Ct. at page 164, declared that certain types of labor disputes are governable by the States and that State powers in such matters were not excluded by Congress in enacting the National Labor Relations Act, as follows: (Italics ours.)

"The National Labor Management Relations Act, as we have before pointed out,[4] leaves much to the states, though Congress has refrained from telling us how much. We must spell out from conflicting indications of congressional will the area in which state action is still permissible.

"This is *not* an instance of injurious conduct which the National Labor Relations Board is without express power to prevent and which therefore either is 'governable by the state or it is entirely ungoverned.' In such cases we have declined to find an implied exclusion of state powers. International Union, U.A.W., A.F. of L. v. Wisconsin Employment Relations Board, 336 U.S. 245, 254, 69 S.Ct. 516, 521, 93 L.Ed. 651. *Nor* is this a case of mass picketing, threatening of employees, obstructing streets and highways, or picketing homes. We have held that the state *still* may exercise 'its historic powers over such traditionally local matters as public safety and order and the use of streets and highways.' Allen-Bradley Local No. 1111, etc., v. Wisconsin Employment Relations Board, 315 U.S. 740, 749, 62 S.Ct. 820, 825, 86 L.Ed. 1154. Nothing suggests that the activity enjoined threatened a probable breach of the state's peace or would call for extraordinary police measures by state or city authority. *Nor* is there any suggestion that petitioners' plea of federal jurisdiction and pre-emption was frivolous and dilatory, *or* that the federal

Board would decline to exercise its powers once its jurisdiction was invoked.

"⁴E.g., Algoma Plywood & Veneer Co. v. Wisconsin Employment Relations Board, 336 U.S. 301, 313, 69 S.Ct. 584, 590, 93 L.Ed. 691; Bethlehem Steel Co. v. New York Board, 330 U.S. 767, 773, 67 S.Ct. 1026, 1029, 1030, 91 L.Ed. 1234; Hill v. State of Florida ex rel. Watson, 325 U.S. 538, 539, 65 S.Ct. 1373, 1374, 89 L.Ed. 1782 (and see concurring and dissenting opinions, pp. 544, 547, and 1376, 1377 respectively); Allen-Bradley Local No. 1111, etc., v. Wisconsin Employment Relations Board, 315 U.S. 740, 748–751, 62 S.Ct. 820, 825, 826, 86 L.Ed. 1154."

The defendants request that if their motion for reargument be denied, they be granted a stay on appeal. Inasmuch as the defendants have no right of appeal from the order of remand, as stated in Title 28 U.S.C.A. § 1447, this Court should not entertain such application for a stay.

Motion denied.