SLATER, for and on behalf of the NA-
TIONAL LABOR RELATIONS BOARD v.
DENVER BUILDING AND CONSTRUC-
TION TRADES COUNCIL, et al.

No. 3812.

United States Court of Appeals
Tenth Circuit.

July 6, 1949.

Winthrop A. Johns, Asst. Gen. Counsel, Washington, D. C. (Robert N. Denham, Gen. Counsel, David P. Findling, Associate Gen. Counsel, Dominick L. Manoli and Sanfjord B. Teu, II, Attorneys, National Labor Relations Board, Washington, D. C., on the brief), for appellant.

Philip Hornbein, Jr., Denver, Colo. (Philip Hornbein, Denver, Colo., on the brief), for appellees.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

Pursuant to section 10(l) of the Act approved June 23, 1947, 61 Stat. 136, 149, 29 U.S.C.A. § 160(l), commonly referred to as the Taft-Hartley Act, Cyrus A. Slater, Acting Regional Director of the Seventeenth Region of the National Labor Relations Board, filed this proceeding against Denver Building and Construction Trades Council, a labor organization, International Brotherhood of Electrical Workers, Local 68, a labor organization, and United Association of Journeymen, Pipe Fitters, and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, Local 3, a labor organization. It was alleged in the petition that the Grauman Company had filed with the Board a charge that the respondents had engaged and were engaging in unfair labor practices within the meaning of section 8(b), subsection (4) (A), of the Act, supra; that the charge had been investigated; and that after such investigation, petitioner had reason to believe that the charge was true and that a complaint of the Board based thereon should issue against the respondents. It was further alleged that petitioner had reasonable cause to believe and did believe that the Grauman Company was engaged at Denver, Colorado, in the business of manufacturing, selling, and sometimes in the installing of soda fountains and fixtures for stores and restaurants; that in the operation of its business during the year 1947 the company purchased approximately $100,000 of raw materials from sources outside the State of Colorado; that during the same period its manufactured products in excess of $100,000 moved in interstate commerce to purchasers outside of Colorado; that Harry Thomas Quigley was engaged in operating a general restaurant business; that McCarty-Johnson Plumbing and Heating Company was engaged in the general heating and plumbing business; and that Acme Electric Company was engaged in the business of general electrical engineering. It was further alleged that Quigley purchased from the Grauman Company a soda fountain and grill to be installed at his place of business; that by the terms of the purchase the Grauman Company was to make all above floor installations; that Quigley contracted with the McCarty-Johnson Company to make the plumbing installations: that he contracted with the Acme Company to do the electrical work for the installation; and that the work began. It was further alleged that the respondents had called and were engaged in, and by orders, instructions, threats of reprisals and promises of benefit, induced and encouraged employees of the McCarty-Johnson Company, employees of the Acme Company, and employees of other employers and persons, to engage in a strike or a concerted refusal in the course of their employment to handle or work on any articles or commodities of the Grauman Company, an object thereof being to force and require Quigley and other persons to cease doing business with the Grauman Company. It was further alleged that the Denver Building and Construction Trades Council had listed the Grauman Company as "unfair" and in that manner had encouraged members of its constituent unions to engage in a concerted refusal in the course of their employment to perform services for, or to work on any goods or commodities of the company. It

was further alleged that Denver Building and Construction Trades Council and United Association of Journeymen, Pipe Fitters and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, Local 3, by orders, instructions, threats of reprisal, and promises of benefits, induced and encouraged two employees of the McCarty-Johnson Company, being members of Local 3, to engage in a concerted refusal to perform services for their employers on the Quigley job, an object thereof being to force and require Quigley to cease doing business with the Grauman Company; and that Denver Building and Construction Trades Council and International Brotherhood of Electrical Workers, Local 68, by orders, instructions, threats of reprisal, and promise of benefit, induced and encouraged two, employees of the Acme Company, being members of Local 68, likewise to engage in a concerted refusal to perform services for their employers on the Quigley job. And it was further alleged that unless such acts and conduct were enjoined there was imminent likelihood that respondents would continue them or repeat them, and would continue to induce and encourage employees of any employers to engage in a concerted refusal, in the course of their employment, to handle or work on any goods, articles, or commodities of the Grauman Company, or to perform services for their employers, an object thereof being to force or require their employers or other persons to cease doing business with such company. The prayer was a temporary injunction enjoining and restraining the respondents from continuing or repeating such unfair labor practices, pending final adjudication of such matters by the Board.

The respondents answered and moved to dismiss the proceeding. One ground of the motion was that the petition failed to state a claim upon which relief could be granted in that it did not appear from the face of the petition that the unfair labor practices charged therein affected commerce within the meaning of section 2(7) of the Act, supra. Another ground was that the relief prayed for, if granted, would deny to respondents their constitutional right of freedom of speech, freedom of assembly, and freedom of voluntary organization, and would enforce upon their members involuntary servitude. The court sustained the motion to dismiss on the ground that it did not appear from the face of the petition that the unfair labor practices charged affected commerce, within the meaning of the Act. Judgment was entered dismissing the action, and petitioner appealed. D.C., 81 F.Supp. 490.

■ Respondents lodged in this court a motion to dismiss the appeal. One ground of the motion is that the trial examiner of the Board dismissed the complaint before the Board, and that since the complaint has been dismissed the Board does not have the power to seek injunctive relief against the respondents or to prosecute the appeal. Petitioner concedes that after the court entered its judgment dismissing this action, the trial examiner dismissed the complaint. But petitioner states in that connection that within the time stipulated under the rules and regulations of the Board petitioner appealed to the Board from the ruling of the examiner dismissing the complaint; that the appeal is pending before the Board; and that the Board has not made final determination of the charges against respondents. These statements of fact are not challenged by respondents and we accept them as correct. Manifestly the complaint has not been finally and effectively dismissed. It is still pending without final disposition. And therefore the motion to dismiss the appeal on the ground that since the complaint has been dismissed the Board is without power to seek injunctive relief against respondents or to prosecute the appeal is not well taken.

■ An additional ground of the motion to dismiss is that the case involves a dispute concerning the installation of a soda fountain in Aurora, Colorado, during the spring and summer of 1948; that the installation of the fountain has been completed; and that therefore the case is moot. The statement of fact that the installation of the particular soda fountain has been completed will be accepted as correct. But the cause of action pleaded in the complaint

was not limited to the installation of the soda fountain purchased by Quigley. It was alleged among other things that the unfair labor practices in which respondents engaged were intended to force and require Quigley and other persons to cease doing business with the Grauman Company; and that unless such acts and conduct were enjoined there was imminent likelihood that respondents would continue or repeat them and would engage in and induce and encourage employees of any employers to engage in a concerted refusal in the course of their employment to handle or work on any goods or commodities of the Grauman Company, or to perform services for their employers, an object being to force or require their employers or other persons to cease doing business with the Grauman Company. It is clear from the face of the petition that the unfair labor practices pleaded therein, then presently existing and anticipated, were not confined to the installation of the soda fountain which Quigley purchased from the Grauman Company. Instead, as pleaded, such unfair labor practices were of a general pattern and were applied to Quigley and others doing business with the Grauman Company. Therefore, the motion to dismiss on the ground that the case has become moot is without foundation. Shore v. Building & Construction Trades Council, 3 Cir., 173 F.2d 678.

■ Coming to the merits, as already indicated, the court rested its dismissal of the action on the ground that it did not appear from the face of the petition that the unfair labor practice charged against respondents affected commerce within the meaning of the Act. The Act is not limited to labor practices which occur during the actual conduct of interstate commerce. It brings within the sweep of its regulatory provisions certain practices which adversely affect interstate commerce. And it has application in individual cases in which the activities are of such character that when multiplied into a general practice could reasonably exert disruptive effect upon interstate commerce calling for preventive regulation. United Brotherhood of Carpenters, etc. v. Sperry, 10 Cir., 170 F.2d 863.

■■ The motion to dismiss the action admitted all facts well pleaded in the petition. That principle is so well established that the citation of cases to support it is unnecessary. It appeared from the face of the petition that during the calendar year preceding the institution of the action, the Grauman Company in the operation of its business purchased from sources outside of Colorado raw materials in the approximate amount of $100,000 and that during such period its sales of manufactured products outside of that state were in excess of $100,000. It further appeared from the petition that due to a disagreement or dispute with the Grauman Company, the respondents were engaged in and were inducing and encouraging members of their constituent unions employed by certain employers and others to engage in a strike or concerted refusal in the course of their employment to handle or work on any materials or commodities manufactured by that company. The inescapable result of a practice of that pattern would be to reduce the sales of manufactured products of the Grauman Company, and that in turn would necessarily bring about a reduction in the volume of raw materials moving in interstate commerce to that company for use in the operation of its business and likewise a reduction in the volume of manufactured commodities moving in interstate commerce from it to its customers outside of Colorado. While viewed in isolation, the reduction in the volume of business of the Grauman Company brought about in that manner might not have immediately perceptible effect upon the free flow of interstate commerce, the practices of respondent as alleged in the petition and admitted by the motion to dismiss, if expanded into a general pattern throughout a substantial part of the country, would inevitably bring about serious disruptive effects upon such commerce. And it is to be borne in mind that this is not a case of respondents engaging in a strike and inducing and encouraging members of their constituent unions to engage in a strike against the Grauman Company with whom they had a disagreement or dispute. It is a case of respondents engaging in a strike and encouraging and induc-

**612**

ing members of their constituent unions working for employers other than the Grauman Company to refuse in the course of their employment to handle or work on materials or commodities coming from the Grauman Company, the object and purpose of such refusal being solely to force or require their employers and other persons to cease doing business with the Grauman Company. Viewed in its entirety, the petition alleged facts constituting unfair labor practices on the part of respondents of a pattern reasonably calculated to bring about disruptive effect upon commerce, within the meaning of the Act, supra. United Brotherhood of Carpenters, etc. v. Sperry, supra; Shore v. Building & Construction Trades Council, supra.

Section 8(c) of the Act is not overlooked. The section provides in effect that the expression of views, argument, or opinion, or the dissemination thereof, shall not constitute an unfair labor practice under the Act, if no threat of reprisal, or force, or promise of benefit is used. The purpose of the section is to safeguard the right to state facts respecting a labor dispute, or to publicize them by pamphlet, banner, or other similar manner, provided no pressure is employed in the nature of a threat of reprisal, or force, or promise of benefit. And that right of free communication is protected by the Constitution. Taxicab Drivers Local Union No. 889 v. Yellow Cab Operating Co., 10 Cir., 123 F.2d 262. But the petition expressly charged that respondents by threats of reprisal and promises of benefits induced and encouraged their constituent members in the employ of the McCarty-Johnson Company, in the employ of the Acme Company, and in the employ of other employers to engage in a strike or a concerted refusal in the course of their employment to handle or work on any of the manufactured products of the Grauman Company. Thus the acts and conduct of respondents, as alleged in the petition and admitted by the motion to dismiss, were not within the protecting provisions of section 8(c) of the Act.

The judgment is reversed and the cause remanded.