**DYNAMIC MFRS., Inc. v. LOCAL 614 OF THE GEN. DRIVERS, WAREHOUSEMEN & HELPERS OF AMERICA, et al.**

No. 11284.

United States District Court
E. D. Michigan, S. D.

Feb. 8, 1952.

John F. Langs, Detroit, Mich., for the plaintiff.

Howard I. Bond and William F. Dohany, Pontiac, Mich., Rodney Baxter and Philip A. Gillis, Detroit, Mich., for the defendants.

THORNTON, District Judge.

The court has before it the plaintiff's petition to remand the instant case to the Circuit Court for the County of Oakland,

652

State of Michigan, from which it was removed by the defendants.

In their petition for removal to this court, the defendants state that "this is an action of a civil nature of which the District Courts of the United States have original jurisdiction, and arises under the laws of the United States; that, as appears from plaintiff's petition herein, a copy of which is hereto attached, the plaintiff bases its claim for relief against the defendants upon and by virtue of and under the Federal statutes and acts of Congress, particularly the Labor Management Relations Act of 1947." If this statement of the defendants is correct, then under 28 U.S.C.A. § 1441(b) this action was properly removed.

The plaintiff, in its petition to remand, contends in substance that it seeks relief under a statute of the State of Michigan, not one of the United States, that the acts alleged do not constitute a labor dispute under either state or federal law, and that since there is no federal question the state court has exclusive jurisdiction.

It is the duty of this court in deciding this motion to determine its own jurisdiction and if "it appears that the case was removed improvidently and without jurisdiction" to remand it. 28 U.S.C.A. § 1447(c).

The Labor Management Relations Act of 1947, under which defendant claims this cause of action arises, in view of the allegations of the complaint, contains a section setting forth what constitutes unfair labor practices, 29 U.S.C.A. § 158. If the allegations in the complaint are such as to bring it within the categories set forth in Section 158, then the action is one arising under the laws of the United States. The fact that the plaintiff in his bill does not identify a Federal statute, does not prevent the court from recognizing the existence of a controversy clearly covered by a Federal statute. The court will take "judicial notice of any Federal laws necessarily brought into play by the allegations of the complaint; and it is immaterial that specific reference to such laws may be omitted in the pleading." Pocahontas Terminal Corporation v. Portland Building & Construction Trade Council, D.C., 93 F.Supp. 217, 219.

From the allegations of the complaint this court has concluded that there is apparent a controversy affecting interstate commerce and that if the allegations as to the activities of defendants are true, then the defendants have been guilty of unfair labor practices as defined by 29 U.S.C.A. § 158(b),(1),(2) and (4). In arriving at these conclusions the court has considered the following allegations of the complaint as determinative:

The complaint alleges that the plaintiff, employing about 175 persons, is engaged in business as a manufacturer, and buys its material in intrastate and interstate commerce; further alleges that on or about January 10, 1952, officers and agents of the defendant union informed the plaintiff that unless it signed a contract forcing employees to join the defendant union, a picket line would be placed around plaintiff's property, regardless of whether the employees wanted such a union or not; that at about the same time the defendant union, through its officers, insisted that plaintiff arrange a meeting in plaintiff's plant for its employees, at which time the plaintiff informed the defendant union's officers that it was not in position to force any of its employees to join or not to join a union, and to attempt such action as requested by the defendant union would amount to an unfair labor practice contrary to the laws of the State of Michigan and the laws of the United States of America, whereupon the defendant union's officers informed the plaintiff that regardless of the fairness or unfairness of this position, they insisted upon plaintiff forcing its employees into the defendant union; that certain officers of the defendant union further informed the plaintiff that unless it capitulated, they would see to it that no company would accept trucks loaded with plaintiff's merchandise, and no trucks of any company would be permitted to enter the premises of plaintiff for the purpose of unloading; that although plaintiff informed the defendant union that it would bargain with the representatives of its employees chosen at a

proper election, the defendants have flatly refused to permit such an election; that the defendants, although given an opportunity to meet with the employees of plaintiff on the plaintiff's property, on January 25, 1952, refused to permit an election, and were unable to obtain, by solicitation, the membership of any of plaintiff's employees in defendant's union, and although failing in this respect, the defendants still insist that the plaintiff force its employees to become members of the defendant union.

The complaint further alleges specific instances wherein certain trucks loaded with material produced by the plaintiff have not been unloaded by the employees of the trucking companies, and that this practice has resulted from the request of, and actions taken by, the defendant union and its officers in preventing employees of said trucking concerns from unloading plaintiff's trucks, further contending that these actions are unlawful according to the laws of the United States and the State of Michigan; and that further, the defendant union and its officers have instructed all trucking companies handling merchandise going into plaintiff's plant, and all trucking companies and trucking docks and railroad company trucks handling merchandise of plaintiff going out of plaintiff's plant, that they should not assist plaintiff in the unloading or loading of said trucks, and should refuse to handle plaintiff's merchandise; the complaint further alleges, on information and belief, that the defendant union, through its representatives, officers and members, has threatened third parties who supply merchandise to plaintiff with strikes and boycotts if they continue to sell and supply merchandise to plaintiff.

It is further alleged that at the meeting of the company employees on its property on January 25, 1952, attended by the officers of the defendant union, the employees unanimously voted not to associate with the defendant union but to establish an independent union known as Independent Fabricators of America.

The complaint further alleges that the acts which the defendants are attempting to force the plaintiff to perform would be in direct violation of Section 17.454 (17) and (18) M.S.A., Comp.Laws 1948, § 423.17.

It is further contended by the plaintiff that the defendants are conspiring to destroy plaintiff's business if plaintiff does not submit to these said unlawful labor objectives, and for the purpose of carrying out the said unlawful labor objectives, the defendant union and its officers are causing and maintaining a picket line at plaintiff's place of business by compelling members of the said union to participate in such picket line.

Having concluded that the question of unfair labor practices is here involved under the Labor Management Relations Act of 1947, this court must now consider what provisions Congress has made for settling such questions. Congress, in creating the National Labor Relations Board, has given it exclusive jurisdiction to determine whether any particular acts constitute unfair labor practices as defined by the act, and to further determine the question whether unfair labor practices in an industry will burden or obstruct, or tend to obstruct commerce.

In National Labor Relations Board v. Ozark Dam Constructors, 8 Cir., 190 F.2d 222, 227, we find the following: "It is apparent from what has been said that the Board has and retains all the power which Congress could constitutionally give it to deal with unfair labor practices burdening or obstructing, or tending to burden or obstruct, commerce or the free flow of commerce, and that, within constitutional limits, the determination of the question whether unfair labor practices in an industry or undertaking will burden or obstruct, or tend to burden or obstruct, commerce, is a question for the Board and not for the courts."

Amazon Cotton Mill Co. (National Labor Relations Board, Intervener) v. Textile Workers Union of America, 4 Cir., 167 F.2d 183, 186, 188, 190, states in part as follows:
"that the only rights made enforceable by the act were those determined by the National Labor Relations Board to exist under the facts of each case; and that the federal trial courts were without jurisdic-

654

tion to redress by injunction or otherwise the unfair labor practices which it defined. \* \* \*

"There is nothing in either the text or the history of the Labor Management Relations Act to indicate any departure from this salutary approach to the matter of conferring jurisdiction on the courts in labor controversies. Title I makes amendments to the National Labor Relations Act, some of which define unfair labor practices on the part of labor organizations; but there is no indication of any intention to change the method by which unfair labor practices were dealt with under the act or to vest the District Courts with jurisdiction as to these matters, except to the limited extent that such jurisdiction was expressly conferred. \* \* \*

"There is nothing in the history of the act, the reports of committees or the debates in Congress which even vaguely supports the contention that its effect was to vest jurisdiction in the District Courts to grant relief against unfair labor practices. Everything said by anyone remotely bearing on the matter is to the contrary. \* \*

"A consideration of the effect and consequences of an interpretation of the act which would give District Courts coordinate jurisdiction with the Board to redress unfair labor practices, as well as a consideration of its reason and spirit, and the history of its enactment, therefore, support what we regard as the reasonable interpretation of its language when considered alone, viz., that it was not intended to vest and does not vest jurisdiction in the District Courts in cases of this sort." See also, Shirley-Herman Co. v. International Hod Carriers, Bldg. & Common Laborers Union of America, Local Union No. 210, 2 Cir., 182 F.2d 806, 17 A.L.R.2d 609, 625 (n9).

This court, therefore, finds itself without jurisdiction to entertain this action. It appears that it was improperly removed for the reason that it is not an action of which "the district courts have original jurisdiction", 28 U.S.C.A. § 1441(b). In accordance with 28 U.S.C.A. § 1447(c), this cause is hereby ordered remanded.