**S. E. OVERTON CO. v. INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, AFL et al.**

No. 2273.

United States District Court, W. D. Michigan, S. D.

Aug. 14, 1953.

Williams & Williams, Paw Paw, Mich., Earl Waring Dunn, Grand Rapids, Mich., for plaintiff.

Morse & Kleiner and A. Robert Kleiner, Grand Rapids, Mich., for defendants Patrick E. Mackey and Local 406 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, A F L.

Victor E. Bucknell, Vicksburg, Mich., for Local 7 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL.

Warner, Norcross & Judd and Harold S. Sawyer, Jr., Grand Rapids, Mich., for Associated Truck Lines, Inc.

STARR, District Judge.

On August 4, 1953, plaintiff company filed a complaint against the defendants in the circuit court of Kent County, Michigan, in which it alleged, among other things,

That it is a Michigan corporation engaged in the manufacture at its factory in South Haven, Michigan, of miscellaneous articles, including gun stocks for the United States government and other wooden products; that in the course of its business it purchases materials and supplies which are delivered to it in large part by common carriers, including the defendant carriers, and that it ships its products to customers by common carriers, including the carriers which are named .as defendants.

The complaint alleges that about March 15, 1953, the defendants entered into an unlawful and illegal conspiracy to injure and destroy the plaintiff's business by preventing delivery of goods and merchandise to the plaintiff and by preventing the shipment of plaintiff's products to its customers; that is, it alleges that the common carriers named as defendants have refused to make deliveries to the plaintiff and have refused to accept deliveries from the plaintiff.

The complaint further alleges that the acts of the defendants constitute a violation of their duty to furnish transporta-

tion to the public, including the plaintiff, and that the defendants' acts constitute an unlawful combination and conspiracy against the plaintiff, in violation of the so-called monopoly statute of the State of Michigan, Comp.Laws Mich. 1948, § 445.761 et seq. The plaintiff further alleges that if the conduct of the defendant carriers is permitted to continue, it will cause irreparable injury to the plaintiff's business.

In its complaint the plaintiff asked for temporary and permanent injunctive relief against the defendants' alleged acts, and upon the filing of its complaint in the circuit court, that court, without notice or hearing, issued its temporary injunction enjoining and restraining the defendants from:

"(a) Refusing and/or engaging in or inducing the refusal to pick up for shipment at plaintiff's place of business goods consigned to plaintiff's customers wherever located or to deliver material and supplies consigned to plaintiff at its place of business.

"(b) Engaging in and/or inducing or encouraging the employees of any employer to refuse or engage in a concerted refusal to accept delivery of and deliver, transport, or otherwise handle any goods, articles, materials or commodities or to perform any services for the purpose of preventing the delivery of such goods, articles, materials or commodities to or from the plaintiff.

"(c) Inducing or encouraging defendant common motor carriers and their employees or other common motor carriers and employees of such other common motor carriers, to refuse or engage in a concerted refusal to deliver or to cause their employees not to deliver goods, articles, materials or commodities to plaintiff or to accept delivery of and deliver, transport or otherwise handle or to cause their employees not to accept delivery of and deliver, transport or otherwise handle

goods, articles, materials or commodities of plaintiff.

"(d) Threatening, interfering with or coercing any persons supplying, selling, or transporting goods to plaintiff or making deliveries of goods to plaintiff or purchasing or transporting goods from plaintiff in order to force or induce them to cease such relationship with plaintiff; or in any way refusing or procuring the refusal by any other persons to accept delivery of and deliver, transport or otherwise handle plaintiff's goods."

It may be noted that in its complaint the plaintiff names as defendants the following: The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL; Local 406 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL; Local 7 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL; Patrick E. Mackey and Lee Haney, business agents of Teamsters Union 406; and the common carriers, the Associated Truck Lines, Inc., a Michigan corporation; Holland Motor Express, Inc., a Michigan corporation. Cecil Wood Myers and Mildred L. Myers, d/b/a Wood & Myers Truck Line of South Haven, Michigan; Albert Van Zoeren, d/b/a Alvan Motor Freight of Holland, Michigan, and C. B. Christian of South Haven, Michigan.

On August 8th, in pursuance of 28 U.S.C.A. § 1446, two defendants, Patrick E. Mackey and Local 406 of the Teamsters Union filed petition for the removal of the case from the circuit court to this Federal district court. On August 10th the defendants filed a motion to vacate the State-court injunction, and an order was entered directing the plaintiff to show cause why the injunction should not be vacated. The defendants have also filed a motion to dismiss the complaint and suit. The plaintiff filed a motion, and later an amended motion, to remand the case back to the circuit court.

of Kent County, from which it was removed.

In this opinion the court will consider and determine all three motions; that is, the defendants' motion to vacate the circuit court's injunction, on which motion an order to show cause was issued, the plaintiff's motion and amended motion to remand, and the defendants' motion to dismiss.

■ The first and primary question to be determined is whether or not this court has jurisdiction of the case, in which the plaintiff seeks only injunctive relief. 28 U.S.C.A. § 1337 confers original jurisdiction on the district court "of any civil action or proceeding arising under any Act of Congress regulating commerce". Under this section of the Code the jurisdiction of the district court does not rest on the question of the amount involved or diversity of citizenship. See Mulford v. Smith, 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092; Weiss v. Los Angeles Broadcasting Co., Inc., 9 Cir., 163 F.2d 313.

■ The complaint does not expressly mention the Labor Management Relations Act of 1947, commonly known as the Taft-Hartley Act, 29 U.S.C.A. § 141 et seq., nor does it mention the Federal statutes relating to interstate commerce. However, it is fundamental that the court may properly take judicial notice of any Federal laws necessarily brought into play by the allegations of the complaint, although specific reference to such laws has been omitted. In Dynamic Mfrs., Inc., v. Local 614 of the Gen. Drivers, Warehousemen & Helpers of America, D.C., 103 F.Supp. 651, at page 652, the district court for the Eastern District of Michigan said:

"The fact that the plaintiff in his bill does not identify a Federal statute, does not prevent the court from recognizing the existence of a controversy clearly covered by a Federal statute. The court will take 'judicial notice of any Federal laws necessarily brought into play by the allegations of the complaint; and it is immaterial that specific reference to such laws may be omitted in the pleading.'"

See also Southern Pacific Co. v. Stewart, 245 U.S. 359, 362, 38 S.Ct. 130, 62 L.Ed. 345; Downey v. Geary-Wright Tobacco Co., D.C., 39 F.Supp. 33; Pocahontas Terminal Corporation v. Portland Building & Construction Trade Council, D.C., 93 F.Supp. 217.

■ It is clear that the complaint alleges a controversy which affects interstate commerce. In fact, the plaintiff in its amended charge filed with the National Labor Relations Board on June 5, 1953,[1] against the Teamsters Unions which are defendants in the present case and the Upholsterers' International Union, alleged that said unions were engaged in unfair labor practices affecting interstate commerce.

■ Furthermore, the complaint filed by the National Labor Relations Board in Civil Action No. 2254 in this court, and the testimony taken in the trial of that case indicates that plaintiff Overton Company is engaged in interstate commerce and that its controversy with the defendant unions in the present case affects interstate commerce. See Slater v. Denver Building & Construction Trades Council, 10 Cir., 175 F.2d 608; Shore v. Building & Construction Trades Council of Pittsburgh, Pa., 3 Cir., 173 F.2d 678, 8 A.L.R.2d 731.

The complaint in the present case charges the defendant unions with conspiracy to injure and destroy the plaintiff's business by preventing delivery of goods and merchandise to the plaintiff and inducing the defendant common carriers to refuse to accept plaintiff's goods

[1.] This amended charge is in evidence in the case of Harry N. Casselman, Regional Director of the Seventh Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, v. Upholsterers' International Union of North America, Local 415, AFL, Civil Action No. 2254, now pending in this court.

for delivery to its customers. These acts as alleged against the defendant unions and their agents and employees are clearly violations of § 8(b) (4) ·(A) of the Labor Management Relations Act, 29 U.S.C.A. § 158(b) (4) (A), which provides in part:

"(b) It shall be an unfair labor practice for a labor organization or its agents— * * *

"(4) to engage in, or to induce or encourage the employees of any employer to engage in, * * * a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: (A) forcing or requiring * * * any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person".

■ The court is obliged to take judicial notice of its records in Civil Actions 2204 and 2254 now pending in this court, which actions involve directly or indirectly the labor dispute involved in the present case. From these records it clearly appears that the acts charged against the defendant unions and their agents and employees and against the defendant common carriers in the present case are, in fact, merely the refusals of the carriers' employees who are members of said unions, to cross the picket lines established by the Upholsterers' International Union No. 415 at the plaintiff's factory or its other places of business in South Haven, Michigan.

In this connection it may be noted that § 7 of the Labor Management Relations Act gives employees the right to self-organization and the right to assist labor organizations, and also the right to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. These provisions of the Act clearly indicate that the employees of the defendant common carriers who are members of the defendant Teamsters' Unions shall have the right to assist other labor organizations such as the Upholsterers' Union, which. is on strike at plaintiff's plant, provided there is no fraud or violence or unlawful action in the rendering of such assistance.

Having held that the alleged acts of the defendant unions, their agents and employees, if true, would constitute unfair labor practices, it might further be argued with some force that the conduct of the plaintiff Overton Company in procuring the issuance by the State court of the temporary injunction involved in the present case also constituted an unfair labor practice on the part of that company.

Section 8(a), 29 U.S.C.A. § 158(a), of the Act provides:

"It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title".

In the Matter of W. T. Carter and Brother, 90 NLRB page 2020, the Board in its decision said at page 2026:

"In addition, a direct consequence of the Respondents' (that is, the employer's) unfair labor practices was the issuance at the Respondents' request of a still outstanding injunction which, in effect, prohibits any union meeting on the Respondents' property except with the Respondents' consent. In view of the serious consequences that flow from violation of a court order, this injunction continues to represent a correspondingly serious impediment to the free exercise of rights guaranteed under the Act, as herein found. We shall, therefore, in order to cure the effects of the Respondents' unfair labor practices in this connection, and in order to effectuate the policies of the Act, or-

der the Respondents to request the court to vacate the injunction, or to appropriately modify the injunction in conformance with our Decision and Order herein."

In view of the provisions of § 7 of the Act prescribing the rights of employees, and in view of § 8(a) of the Act relating to unfair labor practices by an employer, we must consider the actual effect of the State-court injunction which the plaintiff company obtained in the present suit. The practical effect of this injunction is to compel the employees of the defendant common carriers, who are members of the defendant Teamsters' Unions, to cross the picket lines established at the plaintiff's factory by the members of the Upholsterers' Union, which is not a defendant in this case.

Therefore, under the decision of the National Labor Relations Board in the Carter Case, from which I quoted, it might be argued with some force that the act of the plaintiff company in obtaining the State-court injunction would constitute an unfair labor practice by such employer under § 8(a) of the Act, in that it interferes with the rights of the members of the Upholsterers' Union under § 7 of the Act.

From the record of the trial in this court in Civil Action 2254, it appears that there are certain contracts between the defendant Teamsters Unions and the common carriers which are defendants in the present case, which contracts provide in substance that the employees of the carriers who are members of the Teamsters' Unions should not be required to handle goods sent to or from a strikebound plant. In view of these contracts, it might well be argued that the State-court injunction which the plaintiff has obtained in the present case would seriously interfere with the rights of the defendant unions and the defendant carriers under their respective contracts. See the cases of Rabouin d/b/a Conway's Express, 87 NLRB 792; and Pittsburgh Plate Glass Co., 105 NLRB No. 120.

It is clear that the plaintiff's complaint alleges a controversy affecting commerce.

The Court of Appeals for this judicial circuit in the case of Clover Fork Coal Co. v. National Labor Relations Board, 6 Cir., 97 F.2d 331, at page 334 in discussing the jurisdiction of a Federal court in an action involving unfair labor practices as affecting commerce, said:

"It must, we think, be concluded that it is the prevention of strikes, the impact of which upon interstate commerce when and if they occur will directly and immediately burden or obstruct such commerce, that furnishes the ground for the exercise of the Congressional power. The immediacy and directness of the effect of industrial strife upon interstate commerce is the test of jurisdiction, and unfair labor practices fall within the scope of the Act by reason of the fact that long and painful experience teaches that in the generality of cases, if not in particular instances, they lead to such strife."

In the case of Capital Service, Inc., v. National Labor Relations Board, 9 Cir., 204 F.2d 848, at page 851, the court said in part:

"It is the factor of substantial economic effect upon interstate commerce and not the nature of the business that determines federal jurisdiction."

That this court has original jurisdiction of the present action is clearly indicated by the holding of the Court of Appeals for this judicial circuit in Direct Transit Lines, Inc., v. Local Union No. 406, Teamsters' Union, 6 Cir., 199 F.2d 89, 90. In that case in considering a comparable situation the court said:

"We think the (district) court had jurisdiction, inasmuch as the Labor Management Relations Act of 1947 is directly involved in the situation shown by the record to be a controversy involving interstate commerce."

As this action involves a controversy affecting commerce, this court would have original jurisdiction of the

action, and the fact that neither this court nor the state court from which the case was removed has the power to grant the injunctive relief prayed for, does not affect this court's original jurisdiction. In Pocahontas Terminal Corporation v. Portland Building & Construction Trade Council, D.C., 93 F.Supp. 217, at page 225, the court said:

"The test of removal to a Federal court is not what the court must ultimately do with the case under Federal law but whether the Federal law applies to and controls the case by its provisions, as brought into operation by the complaint. General Investment Co. v. Lake Shore [& M. S.] Ry., 1922, 260 U.S. 261, 43 S.Ct. 106, 67 L.Ed. 244; Davis v. Nunley, 5 Cir., 1948, 168 F.2d 400, affirming D.C.N.D.Ala.1947; State of Florida ex rel. Watson v. Bellman, 5 Cir., 1945, 149 F.2d 890; Kolkin v. Gotham Sportswear, D.C. S.D.N.Y.1935, 10 F.Supp. 682.

"It is clear that in the present case a Federal law regulating commerce is directly involved by the allegations of the complaint, so that this Court has original jurisdiction of the case, without regard to the final decision which this Court must reach, in accordance with the governing Federal law.

"This Court has given serious consideration to the views expressed on this point in the case of Home Building Corp. v. Carpenters District Council, D.C.W.D.Mo.1943, 53 F.Supp. 804, relied upon by the plaintiff in its brief, but adheres to the view that it does have original jurisdiction of the subject matter, even though it lacks the power to grant the relief prayed for. Davis v. Nunley, 5 Cir., 1948, 168 F.2d 400".

In its complaint, the plaintiff charges that the alleged acts of the defendants constitute an unlawful combination and conspiracy of said defendants against the plaintiff, in violation of the monopoly statute of Michigan, Comp. Laws Mich.1948, § 445.761 et seq. This state statute, which is entitled "An Act relative to agreements, contracts and combinations in restraint of trade or commerce", provides in part:

445.761. "All agreements and contracts by which any person, co-partnership or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void."

445.762. "All combinations of persons, copartnerships, or corporations made and entered into for the purpose and with the intent of establishing and maintaining or of attempting to establish and maintain a monopoly of any trade, pursuit, avocation, profession or business, are hereby declared to be against public policy and illegal and void."

It seems perfectly clear that the allegations of the complaint in the present case do not charge an agreement not to engage in any avocation, employment, trade, profession or business, and do not charge a combination for the establishment and maintenance of a monopoly of any trade, pursuit, avocation, profession or business. Therefore, the Michigan so-called monopoly statute has no application in the present case.

The plaintiff in the present case contends that the alleged acts of the defendants constitute a violation of the common law duty of the defendant common carriers to furnish transportation to the general public, including the plaintiff. It is obvious that this alleged violation of common-law duty arises only by reason of primary labor disputes between the plaintiff and the defendant unions and the Upholsterers Union, and that such violation is secondary to these labor disputes.

Congress, in creating the National Labor Relations Board, gave it jurisdiction and power to determine whether any particular acts constitute unfair labor

practices and whether such practices in an industry will burden or obstruct commerce, or tend to burden or obstruct commerce. It is obvious that the real parties which the plaintiff in the present action is seeking to reach by injunction are the defendant unions and their employees and the Upholsterers' Union, which is not a party to this suit but which is conducting the strike and picketing at the plaintiff's factory and other places of business. In other words, the real issues underlying the present suit are labor practices as they affect commerce, and Congress has created the National Labor Relations Board and given it exclusive jurisdiction to determine these issues.

This court is not in accord with the far-reaching decision in the case of Montgomery Ward & Co. v. Northern Pacific Terminal Co. of Ore., D.C., —— F.Supp. ——, in which the court held in effect that the common-law duty on common carriers to accept and make deliveries was not affected by the provisions of the Labor Management Relations Act relating to unfair labor practices and the Acts of Congress relating to commerce.

As I said before, the complaint in this case alleges a controversy affecting commerce. The court accordingly concludes that under the allegations of the complaint it has jurisdiction of the case even though it lacks the power ultimately to grant the injunctive relief prayed for. See Pocahontas Terminal Corporation v. Portland Building & Construction Trade Council, D.C., 93 F.Supp. 217.

■ In support of its motion to remand this case to the circuit court plaintiff contends that the case could not properly be removed except by the joinder of all of the defendants in the petition for removal. It appears that the petition for removal filed August 8th was made by defendants Local No. 406 of the International Brotherhood of Teamsters and Patrick E. Mackey, business agent of the Union. It also appears that some of the other defendants had not been served with State-court process or with the complaint and State-court injunction at the time of removal. 28 U.S.C.A. § 1448 provides:

"In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.

"This section shall not deprive any defendant upon whom process is served after removal of his right to move to remand the case."

This quoted provision of the Code clearly indicates that one or more of the defendants may remove the case, and that other defendants who had not been served with process at the time of removal may be served subsequent to the removal and thereafter may assert their rights under the statute.

This provision of the Code was considered and interpreted in the case of Hutchins v. Priddy, D.C., 103 F.Supp. 601, at page 607. In that case the court said:

"It is the intent of Section 1448, Title 28, U.S.C.A. to secure to one of several defendants in an action, who alone has been duly served with process, the right of removal of an action and that as soon as removability exists. He need not wait until other defendants are served with process before perfecting such removal. If he should do so, his right of removal may be lost. When the case removed under said section reaches the federal courts, process and service thereof may be completed against those defendants not before the court. Any defendant so subsequently served may move to remand the case to the state court, but a plaintiff may not do so if jurisdiction of the United States Dis-

trict Court is established over the action.

"In light of the foregoing, we believe that the instant action was properly removed to this United States District Court."

See also Driscoll v. Burlington-Bristol Bridge Co., D.C., 82 F.Supp. 975, at page 985.

Therefore, the plaintiff's motion and amended motion to remand this case to the State court from which it was removed are denied.

Having concluded that this court has jurisdiction of the present case and that the question of unfair labor practices under the Labor Management Relations Act is involved, the court must now consider whether or not it has the power and authority to grant the injunctive relief prayed for by the plaintiff.

▇ The law is well established that a Federal district court does not have original jurisdiction to enjoin unfair labor practices as defined in § 8 of the Labor Management Relations Act, 29 U. S.C.A. § 158, or to enjoin violations of § 303(a), 29 U.S.C.A. § 187(a). See Amazon Cotton Mill Co. (National Labor Relations Board, Intervener) v. Textile Workers Union of America, 4 Cir., 167 F.2d 183; Amalgamated Ass'n of Street, Electric Ry. & Motor Coach Employees of America (National Labor Relations Board, Intervener) v. Dixie Motor Coach Corporation, 8 Cir., 170 F.2d 902; Schatte v. International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of United States and Canada, 9 Cir., 182 F.2d 158, certiorari denied 340 U.S. 827, 71 S.Ct. 64, 95 L.Ed. 608; California Ass'n of Employers v. Building and Construction Trades Council of Reno, Nev. and Vicinity, 9 Cir., 178 F.2d 175; Rock Hill Printing & Finishing Co. v. Berthiaume, D. C., 97 F.Supp. 451; International Longshoremen's & Warehousemen's Union, Local 6, C. I. O. v. Sunset Line & Twine Co., D.C., 77 F.Supp. 119; United Packing House Workers of America v. Wilson & Co., D.C., 80 F.Supp. 563; Depart-

ment Store Service, Inc., v. John Doe, D.C., 98 F.Supp. 870; Dynamic Mfrs., Inc., v. Local 614 of Gen. Drivers, Warehousemen & Helpers of America, D.C., 103 F.Supp. 651. See also the late decision by the Court of Appeals for the 9th Circuit in the case of Capital Service, Inc., v. National Labor Relations Board, 9 Cir., 204 F.2d 848.

▇ It may be noted there is no charge of fraud or violence on the part of any of the defendants, and in the absence of such a charge neither the State court nor this Federal court has the power to grant the injunctive relief prayed for.

The Supreme Court of the United States has repeatedly held that Congress by its legislation has preempted the field of labor relations as regards interstate commerce, except in those instances where States have expressly and definitely legislated upon points of activity not within the purview of the Labor Management Relations Act. See International Union of United Automobile Workers of America v. O'Brien, 339 U.S. 454, 70 S.Ct. 781, 94 L.Ed. 978; Plankinton Packing Co. v. Wisconsin Employment Relations Board, 338 U.S. 953, 70 S.Ct. 491, 94 L.Ed. 588; LaCrosse Telephone Corporation v. Wisconsin Employment Relations Board, 336 U.S. 18, 69 S. Ct. 379, 93 L.Ed. 463; Bethlehem Steel Co. v. New York State Labor Relations Board, 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234; Hill v. Florida ex rel. Watson, Attorney General, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782.

Reference has been made to the case of Local Union No. 10, United Ass'n of Journeymen Plumbers, etc., v. Graham, 345 U.S. 192, 73 S.Ct. 585. That case related to a local picketing situation in connection with the construction of a city school building and did not in any way involve a controversy affecting commerce. The Supreme Court merely held that under the Virginia right-to-work statute a Virginia State court injunction against peaceful picketing did not violate the Fourteenth Amendment of the Constitution of the United States. The

question of unfair labor practices under the Labor Management Relations Act as affecting commerce was not involved in that case, and, therefore, it has no application to the questions before the court in the present action.

The cases of International Brotherhood of Teamsters' Union v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995, and Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834, and other cases involving State laws as applied to local practices and having no connection with commerce or with unfair labor practices under the Labor Management Relations Act, have no application to the questions now before this court.

It is clear that the complaint in the present action alleges a controversy affecting commerce and, therefore, that the action is properly removable to this court. The acts charged against the defendant unions and their agents and employees may involve unfair labor practices under the Labor Management Relations Act. The Congress in creating the National Labor Relations Board has given it exclusive right to determine whether any particular acts constitute unfair labor practices as defined by the Act, and also to determine the question as to whether unfair labor practices in a particular industry will burden or obstruct, or tend to burden or obstruct, commerce.

■ From the allegations of the complaint in the present case it is obvious that the plaintiff company could properly seek relief under the Labor Management Relations Act, and, if aggrieved by a final order of the National Labor Relations Board, it could under § 10(f), 29 U.S.C.A. § 160(f), obtain a review thereof in a court of appeals.

The Congress created the Labor Management Relations Act, the title of which provides in part:

"It is the purpose and policy of this Act, in order to promote the full flow of commerce, to prescribe the legitimate rights of both employees and employers in their rela-tions affecting commerce, to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other, to protect the rights of individual employees in their relations with labor organizations whose activities affect commerce, to define and proscribe practices on the part of labor and management which affect commerce and are inimical to the general welfare, and to protect the rights of the public in connection with labor disputes affecting commerce." 29 U.S.C.A. § 141.

The Act provides for a National Labor Relations Board with full authority to hear charges of alleged unfair labor practices and with authority to determine whether alleged unfair practices burden or obstruct or tend to burden or obstruct commerce. From a study of the legislative history of the congressional action in the adoption of the Labor Management Relations Act, this court is convinced that employers and employees involved in disputes over alleged unfair labor practices as affecting commerce should seek their relief through the procedures provided for by that Act.

It is not within the province of this court to question the wisdom of the Congress or to change the Act or the procedures provided therein. The only province of the court is to enforce that Act. Employers and employees should not seek to circumvent the Act through procedures other than those expressly provided for by the Act.

■ This court is disposed to follow the several Federal court decisions holding that an action involving a controversy affecting commerce is properly removable from a State court, but that when the Federal court is without power to grant injunctive or other relief prayed for, the case should be dismissed. See Pocahontas Terminal Corporation v. Portland Building & Construction Trade Council, D.C., 93 F.Supp. 217.

Therefore, as the court cannot grant the injunctive relief prayed for in the

present case, the defendants' motion to dismiss is granted, and the temporary injunction entered in the circuit court of Kent county is vacated and set aside, and as I stated before, the plaintiff's motion to remand is denied.

An order will be entered in accordance with this opinion.

No costs will be allowed in connection with these motions.